OPINION
This is an appeal of a judgment of the Ashtabula County Court of Common Pleas, upon a jury verdict, convicting appellant, Anthony Hargrove, of felonious assault.
In January 2000, appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree. The indictment stemmed from an incident that occurred between appellant and his girlfriend, Kristol McMillen, on November 16, 1999. At arraignment, appellant pleaded not guilty.
The record reveals that, on the evening of November 16, 1999, the victim, Kristol McMillen, and her friend, Josie Bennett ("Bennett"), drove to a Burger King restaurant, after work. They then proceeded to the residence of Jason Boles ("Boles"), a friend of appellant, to tell him that appellant had told the victim that she had to terminate her friendship with Boles.
At trial, the state's witnesses testified that the victim and Boles talked in the driveway in front of the house. After some time had passed, appellant arrived at the house. According to the state's witnesses, appellant grabbed the victim, yelled at her, and forced her behind the house. During the ensuing struggle, appellant struck the victim on the head with a small silver pistol causing her to bleed from a cut on her ear. Appellant then released the victim.
The victim, accompanied by Bennett and Boles, went into the bathroom of the house to clean up. The victim testified that she stayed in the bathroom for thirty minutes or more, because appellant was inside the house, and she was afraid. When the victim realized that the police had not been called, she left the house and got into the passenger seat of her car, with Bennett driving. Both the victim and Bennett testified that appellant ran out of the house shouting at the victim and put a gun up to the car's passenger side window. Bennett drove directly to the police station, where the victim filed a complaint and gave a statement.
A jury trial commenced May 16, 2000 and concluded the following day. Appellant presented Boles and two women, who were also residents of the house, as his witnesses. Boles testified that he and the victim did talk, but when appellant arrived, he spoke calmly with the victim. Later, Boles testified, he went up to the bathroom of the house with the victim, where they "made out." Boles further testified that, when the victim later left, she was completely unharmed and appellant did not follow her and Bennett out to the car.
Appellant's other two witnesses, Jessica Malinkey and Valerie Hogkinson, testified that they did not observe a scuffle between appellant and the victim. They also attested that they did not see any blood on the victim or see anyone give the victim a towel to clean up blood. Further, they stated that they did not see appellant go out after the victim when she left.
On March 18, 2001, the jury returned a unanimous guilty verdict. Subsequently, appellant filed a motion for a new trial. The trial court, after a hearing to consider the motion, overruled it, and sentenced appellant to five years of community control.
From this judgment, appellant filed a timely notice of appeal. On June 23, 2001, appellant's counsel filed a motion to withdraw from representation because he found "the appeal to be wholly frivolous." On the same day appellant's counsel filed an Anders brief, pursuant toAnders v. California (1967), 386 U.S. 738, specifying portions of the record that might arguably support an appeal.
This court granted counsel's motion to withdraw and appointed substitute counsel for appellant. In addition, this court granted leave to file a supplemental brief. In his Anders brief, and his supplemental brief, appellant raises the following assignments of error:
 "[1.] The appellant did not receive the effective assistance of counsel in violation of the Sixth Amendment and Fourteenth Amendment to the United States Constitution and Article 1, Section 10 of the Ohio Constitution."
 "[2.] The trial court erred to the prejudice of appellant when it denied the state's request to instruct the jury on the lesser included offense of assault."
 "[Supplemental assignment 3.] The appellant received ineffective assistance of trial counsel in violation of his constitutional rights."
 "[Supplemental assignment 4.] The trial court erred by failing to excuse a biased juror for cause, to the prejudice of appellant."
 "[Supplemental assignment 5.] Appellant's conviction was against the manifest weight of the evidence."
 "[Supplemental assignment 6.] The trial court erred by denying defendant's motion for a new trial."
As some of appellant's assignments of error are related, we will group them for discussion. In appellant's first assignment of error and his third supplemental assignment of error, he argues that he was denied the effective assistance of counsel at his trial. He received ineffective assistance, appellant argues, because: his counsel did not obtain the presence of Assistant Prosecutor David Foster ("Foster") to impeach the credibility of a prosecution witness; his counsel failed to challenge a juror for cause, when the juror indicated, during voir dire, that he would be inclined to believe the testimony of a police officer more than the testimony of other citizens; and, his trial counsel refused an instruction on the lesser included offense of assault, when the state requested it.
"Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, citing Strickland v. Washington (1984),466 U.S. 668. A licensed attorney is presumed to have rendered effective assistance in representing a criminal defendant; thus, appellant bears the burden of proving ineffective assistance. State v. Kerns (July 14, 2000), 11th Dist. No. 99-T-0106, 2000 Ohio App. LEXIS 3202, at *7.
On the morning of Wednesday, May 17, 2000, appellant's counsel sent a subpoena to the Prosecutor's office for Foster, requiring that he appear to testify that day as a rebuttal witness. Specifically, the defense wanted to rebut the victim's testimony with regard to the no-contact order between the victim and appellant. The victim testified she was informed that it was permissible for her and appellant to associate, so long as there was no problem between them. Foster was unavailable to testify because he was out of the state. Appellant's counsel requested that the court grant a continuance, so that Foster's deposition could be secured. The court denied this request, and the trial proceeded without Foster's testimony.
It is clear from these facts that appellant's attorney's representation did not fall below the standard of reasonable representation. While appellant's attorney was not able to perfect service on Foster, when confronted by the unavailability of his impeachment witness, appellant's attorney attempted to secure the testimony by deposition. The record is devoid of any explanation why a deposition was not taken at an earlier time.
Appellant's counsel's conduct falls within the minimum standards of reasonable representation. The court's denial of appellant's motion for a continuance does not make the representation ineffective. See State v.Clemons (1998), 82 Ohio St.3d 438, 451, 1998-Ohio-406.
Appellant also claims that he received ineffective assistance of counsel because his attorney failed to effectively question or challenge a juror for cause, when the juror indicated that he would believe a police officer to be a more credible witness.
When considering the conduct of defense counsel in voir dire, the Supreme Court of Ohio has explained that defense counsel's voir dire does not have to take a specific form, and counsel does not have to ask any specific questions. State v. Hartman (2001), 93 Ohio St.3d 274, 300,2001-Ohio-1580. Furthermore, an appellate court "`will not second-guess trial strategy decisions' such as those made in voir dire, and `"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id.; quoting Statev. Mason (1998), 82 Ohio St.3d 144, 157-158, 1998-Ohio-370.
When questioned by the court, the juror in question indicated that he might tend to think police officers to be more credible than other witnesses at a trial. However, in response to further questioning by the court, the juror indicated that he would be able to judge each witness's credibility based on the testimony given at trial. Defense counsel then asked the juror whether, considering the fact that the officers were not witnesses to the event, he could judge the credibility of the witnesses and make a decision based upon their testimony. The juror indicated that he could. Thus, appellant's counsel's acceptance of the juror did not constitute ineffective assistance of counsel. See State v. Bair (Apr. 8, 1999), 8th Dist. No. 72881, 1999 Ohio App. LEXIS 1572, at *29.
At trial, appellant's counsel opposed the state's request for an instruction on the lesser-included offense of simple assault, arguing that it was not supported by the facts shown at trial. Appellant clams that his counsel was ineffective because he opposed the instruction.
An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 48-49. "[E]rrors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." Statev. Lundgren (Apr. 22, 1994), 11th Dist. No. 90-L-15-125, 1994 Ohio App. LEXIS 1722, at *53.
"The tactical choice not to pursue an instruction on a lesser included offense falls within the realm of sound trial strategy, and will not give rise to a claim of ineffective assistance of counsel." State v. Simpson
(June 26, 1998), 11th Dist. No. 97-L-086, 1998 Ohio App. LEXIS 2914, at *8, citing Clayton, supra, at 47. Thus, counsel's opposition to an instruction on the lesser-included offense of simple assault does not constitute ineffective assistance of counsel. Appellant's first and third assignments of error are without merit.
In appellant's second assignment of error, despite his initial opposition to an instruction on the lesser-included offense of simple assault, he now argues that the trial court erred by failing to give it. Appellant claims that the facts presented at trial could have supported an instruction on the lesser-included offense. This may be true, but appellant failed to present a timely objection to the court's instruction.
When a party fails to object to a jury instruction prior to the jury retiring to consider its verdict, as required by Crim.R. 30, the party waives any claims of error based upon the erroneous instruction. Statev. Long (1978), 53 Ohio St.2d 91, paragraph one of the syllabus. As appellant did not object to the court's failure to give an instruction on simple assault, but rather argued that the court should refuse to give such an instruction, appellant has waived all error, save for plain error, based upon the lack of such an instruction. Id. at 94-95.
A jury instruction does not constitute plain error unless the outcome of the trial would clearly have been different but for the error. Id. at paragraph two of the syllabus. See also State v. Moreland (1990),20 Ohio St.3d 58, 62. In addition, "notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, supra, at paragraph three of the syllabus.
In this case, appellant cannot show that the outcome of the trial would certainly be different if the court had given the instruction on the lesser-included offense of simple assault. In a case similar to the case at bar, the Supreme Court of Ohio determined that, when trial counsel limited the jury instructions to not include lesser-included offenses, the decision was a matter of trial strategy and not plain error. Statev. Clayton (1980), 62 Ohio St.2d 45. Appellant's second assignment of error is without merit.
In appellant's fourth assignment of error, he argues that the trial court erred by failing to excuse a juror for cause, when appellant moved the court to do so. This, appellant claims, forced him to use one of his four peremptory challenges to exclude this juror.
Prior to voir dire, appellant's trial counsel informed the court that he was acquainted with one of the prospective jurors. The court conducted a voir dire of the prospective juror in chambers, with the prosecutor and appellant's counsel present. During the course of this voir dire, it was revealed that, prior to the trial of the case sub judice: the juror's husband had written letters to the newspaper concerning appellant's counsel; the juror and her husband hung door knockers on doors, regarding counsel's involvement with the City of Geneva; counsel had to write a letter to the juror concerning phone calls made to her sister late at night; and, several years before the trial, counsel was going to represent the juror's husband concerning a marriage dissolution.
During the course of this voir dire, the court and appellant's counsel asked the juror whether she could be a fair and impartial juror, in spite of her prior interactions with appellant's counsel. The juror repeatedly responded that she could be a fair and impartial juror. The court overruled appellant's motion to dismiss the juror for cause. Appellant excluded the juror from the panel with a peremptory challenge.
Pursuant to R.C. 2313.43, the validity of a challenge of a juror for cause "shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased." It is within the court's discretion to determine the juror's ability to be impartial.State v. White (1998), 82 Ohio St.3d 16, 20, 1998-Ohio-363; citing Statev. Williams (1983), 6 Ohio St.3d 281, 288.
When an appellate court reviews a decision of a trial court on a challenge to a prospective juror, the appellate court will not reverse the trial court's decision absent a showing of an abuse of the trial court's discretion. White, supra, at 20. Further, the appellate court must give deference to the trial judge, who is able to see and hear the juror. Wainwright v. Witt (1985), 489 U.S. 412, 426.
We find no abuse of discretion in the trial court's decision not to dismiss the juror. The juror consistently asserted that she could be fair and impartial despite her acquaintance with appellant's counsel. The court was entitled to accept her assurances to this effect. See State v.Jones (2001), 91 Ohio St.3d 335, 338, 2001-Ohio-57. Thus, appellant's fourth assignment of error is without merit.
In appellant's fifth assignment of error, he argues that his conviction was against the manifest weight of the evidence.
When an appellate court reviews a criminal verdict to determine whether it is against the manifest weight of the evidence, it:
 "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
The case sub judice is not a case in which the evidence weighs so heavily against the conviction that we must reverse the conviction and grant a new trial. Appellant asserts three arguments in support of his conclusion that his conviction was against the manifest weight of the evidence. First, he claims that there was a dispute as to whether there was blood on the victim's shirt the night of the assault. Second, he argues that there was a dispute as to the extent of the victim's injuries, and whether the victim had a lump on her head or not. Third, appellant argues that there is a dispute as to whether appellant had a gun or a cell phone in his hand when he assaulted the victim.
Appellant's first and second arguments are not well taken. Appellant was convicted of violating R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Even if appellant were correct, and the victim had not bled on her shirt and did not have a lump on her head, the jury did not lose its way in determining that appellant at least attempted to cause physical harm to the victim with a deadly weapon.
Appellant's third argument is likewise not well taken. Both the victim and the state's witness, Bennett, testified that appellant struck the victim with a small, silver gun. Appellant impeached Bennett with prior testimony, but in that testimony, Bennett still testified that she thought it was a gun and that she was "almost positive" that it was a gun. In addition, both the victim's and Bennett's statements to the police, taken hours after the incident occurred, clearly state that appellant hit the victim with a gun. Defense witness Jessica Malinkey testified that appellant always carried around a small silver cell phone, however, she also testified that she was inside the house and did not see any altercation between appellant and the victim. Based on this evidence adduced at trial, the jury did not clearly lose its way in determining that appellant used a gun when he caused or attempted to cause physical harm to the victim. Appellant's fifth assignment of error is without merit.
In appellant's sixth assignment of error, he claims that the trial court erred by overruling his motion for a new trial. Appellant asserts that the court should have granted his motion for a new trial based on the fact that the state violated Crim.R. 16 by failing to disclose the EMT report made the night of the incident as exculpatory evidence. Appellant claims that, even though the report was entered into evidence at trial as a joint exhibit, and read to the jury, he could have subpoenaed the EMT to testify as to the lack of a lump on the victim's head or to the victim's demeanor during the examination. Appellant did not submit an affidavit in support of his motion for a new trial. The state claims that it never had the EMT report in its case file, and thus the state did not violate any duty to disclose it.
Motions for a new trial are governed by Crim.R. 33, which states, in pertinent part:
"(A) Grounds
 "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
"* * *
 "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state."
Further, Crim.R. 33(C) states that: "[t]he causes enumerated in subsection (A)(2) and (3) must be sustained by affidavit showing their truth * * *." A court's decision on a motion for a new trial is a matter of the court's sound discretion, and an appellate court will not overturn that decision absent a showing of an abuse of the court's discretion.State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus.
A trial court does not abuse its discretion when it overrules a motion for a new trial that is not properly supported by affidavits as required by Crim.R. 33(C). Toledo v. Stuart (1983), 11 Ohio App.3d 292; see alsoState v. Johnson (June 17, 1988), 5th Dist. No. 87AP110086, 1988 Ohio App. LEXIS 2711, at *5.
In the case sub judice, appellant did not submit affidavits in support of his contention that the state had committed misconduct by withholding exculpatory information from appellant in violation of Crim.R. 16. Indeed, appellant did not include the state's failure to disclose the EMT report in his written motion for a new trial. Thus, the court did not abuse its discretion in overruling appellant's motion for a new trial.Furthermore, for a court to grant a new trial under Crim.R. 33, "[i]t must affirmatively appear from the record that the [appellant] was prejudiced by one of the grounds set forth in section (A) of the rule."State v. Nahhas (Mar. 16, 2001), Trumbull App. No. 99-T-0179, 2001 Ohio App. LEXIS 1236, at *10. As discussed above, appellant could have been convicted of felonious assault whether the victim had a lump on her head or not. Thus, the trial court's determination that appellant was not prejudiced by the state's failure to disclose the EMT report did not constitute an abuse of discretion. Appellant's sixth assignment of error is without merit.
For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, P.J., DONALD R. FORD, J., concur.