DECISION AND JUDGMENT ENTRY
This accelerated appeal comes to us from a judgment issued by the Ottawa County Municipal Court which found appellant guilty of operating a junk yard without a license. Because we conclude that the trial court's decision was proper as to the conviction but not as to the sentence, we affirm in part and reverse in part.
Appellant, Brent A. Weaver, was cited by the Rocky Ridge Police Department for violating Rocky Ridge Ordinance 78-03, maintaining a junk yard without a license, "for a period from May 1, 1999 through May 31, 1999 each day being a separate offense."
Pursuant to App.R. 9., the following relevant facts were determined by the trial court. Rocky Ridge Police Chief, Bud Chasteen, observed "junk" on appellant's premises, including boxes, motors, "old machinery exposed to the elements," machinery parts, and truck trailers without their axles and wheels. Prior to citing appellant, the chief had discussed the property conditions with appellant to effect clean-up. Although the chief would not specifically say that the machinery he saw stored on the premises is junk, he did identify photos of the property which were admitted as exhibits.
Appellant, Brent Weaver testified that the truck trailers, which are worth more than $400 each, are storage units and rented to customers for $60 per month. Appellant stated that his premises are not a junk yard because he rents the trailers as storage lockers and that the large machinery, used for making car parts, was operable and being stored for a paying "tenant." Appellant claimed that he had met with town council and the police chief prior to setting up his "warehouse facility, advised them of his plans, and was given the go ahead to start his business." Appellant offered three photo exhibits of other properties that, in his opinion, were unlicensed junk yards. Appellant agreed that the photo exhibits offered by appellee accurately depicted his property.
On August 4, 1999, the trial court found appellant guilty and ordered him to bring the property into compliance by the sentencing date which was continued until October 6, 1999. On that date, the court fined appellant $5,000 plus costs, but suspended $4,750 of the fine, on condition that appellant continue to be law abiding for one year.
Appellant now appeals that decision, setting forth the following four assignments of error:
 "I. APPELLANT'S PROPERTY DOES NOT FIT THE DEFINITION OF `JUNK' AS DEFINED IN ROCKY RIDGE ORDINANCE 78-03.
 "II. SELECTIVE ENFORCEMENT OF [SIC] APPELLANT VIOLATES HIS GUARANTEE OF EQUAL PROTECTION.
 "III. THE TRIAL COURT IMPROPERLY DELEGATED THE ROLE IN DEFINING TERMS UNDER ORDINANCE 78-03 TO THE ROCKY RIDGE CHIEF OF POLICE.
 "IV. THE TRIAL COURT IMPROPERLY IMPOSED THE FINE FOR VIOLATION OF ORDINANCE 78-03."
 I.
We will address appellant's first and third assignments of error together. Appellant argues that his property does not contain "junk" as defined by the local ordinance and that it was error to permit the chief of police to determine whether or not the items on appellant's property constituted junk. Appellant is essentially arguing that the trial court's decision was against the manifest weight of the evidence.
Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. The appellate court,
 "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"
Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Rocky Ridge Ordinance 78-03(A) defines "junk" as
 "Old scrap copper, brass, rope, rags, trash, waste, batteries, paper, rubber, metal, junked or dismantled or wrecked motor vehicles or parts thereof, iron, steel, and other old or scrap ferrous or nonferrous materials."
A "junk yard" is defined as
 "An establishment or place of business or a facility which is maintained or operated or which exists for the purpose of storing, keeping, buying, selling, or recycling junk, or for the maintenance or operation of an automobile graveyard, and including garbage dumps and sanitary landfills. The term `junk yard' shall also include any site, location, or premise on which are kept two or more junk motor vehicles, whether or not for a commercial purpose. * * *" (Emphasis added.)
Since the case was tried to the court rather than a jury, we must determine whether or not the court clearly lost its way resulting in a miscarriage of justice. The evidence presented established that appellant was, in fact, storing dismantled truck trailers on the property, along with other items of questionable usefulness or value. The trailers were not integrated into a building or made to look like storage lockers. They were simply placed in a line. In addition, the property contained parts of machinery, boxes of what appeared to be trash, old machinery that was not kept under cover, and was unkempt in appearance. Appellant insists that because the machinery was operable and the trailers were allegedly worth more than $400 each and were being rented out as storage lockers, this removes them from the definition of "junk."[1] Appellant's argument is without merit.
In our view, the trailers are "dismantled motor vehicles or parts thereof" and, regardless of their use or value, may be classified under the ordinance as junk. The boxes of miscellaneous items, machine parts, and motors likewise meet the "junk" definition. Finally, appellant's claim that the car parts manufacturing machines were operable, had substantial value and were being stored for someone else, does not exempt them from the definition of "junk." The value of an item does not determine whether or not it is junk; junk yards are filled with parts and other articles which are then sold for value and profit.[2]
The machines were old, had been exposed to the elements, appeared rusty and deteriorated, and were apparently being "stored" on a long term basis. In our view, the machines qualified as junk under the ordinance. However, even presuming for the sake of argument that the machines were not junk, other items were present on the property that did meet the definition of junk and thus supported the trial court's findings.
We also disagree with appellant's contention that the police chief was permitted to define the term "junk." The chief testified as to what was found on the property and identified the photos, which appellant agreed represented the status of the "storage" of items on his property. Appellant was then permitted to dispute that the items were "junk." Although no finding was made as to specifically which items constituted "junk," evidence was presented which supported the trial court's finding that appellant's property contained junk items and, thus, constituted a junk yard.
Accordingly, appellant's first and third assignments of error are not well-taken.
 II.
Appellant, in his second assignment of error, contends that the ordinance was selectively enforced against him and not other alleged violators.
Over the years, the Supreme Court of Ohio has referred to the standard for selective enforcement as "intentional and purposeful discrimination." City of Cleveland v. Trzebuckowski
(1999), 85 Ohio St.3d 524, 531, quoting State v. Freeman (1985),20 Ohio St.3d 55, 58. To establish the defense of selective enforcement
 "`a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.' " Id., citing to State v. Flynt (1980), 63 Ohio St.2d 132, 134,(Quoting United States v. Berrios
[C.A.2, 1974], 501 F.2d 1207, 1211.)
See, also, State v. Getsy (1998), 84 Ohio St.3d 180, 203; State v.Lawson (1992), 64 Ohio St.3d 336, 346; Freeman,20 Ohio St.3d at 58.
The mere demonstration that "another person similarly situated was not prosecuted is not enough; a defendant must demonstrate actual discrimination due to invidious motives or bad faith." Freeman, 20 Ohio St.3d at 58; Trzebuckowski,85 Ohio St.3d at 532. There is a strong presumption that a prosecution supported by the evidence is not discriminatory. See State v.Keene (1998), 81 Ohio St.3d 646.
In this case, the photos presented by appellant appear to be residential properties, which do not meet the ordinance or statutory definition of junk yard, "an establishment or place of business or facility which is maintained or operated or which exists for the purpose of storing, keeping, buying, selling, or recycling junk * * *" or a "premise on which are kept two or more junk motor vehicles." However, even if the properties met the definition, appellant has not established the second prong for selective enforcement, that the prosecution was based upon some invidious or impermissible discriminatory reason. Therefore, we conclude that the ordinance was not selectively enforced against appellant.
Accordingly, appellant's second assignment of error is not well-taken.
 III.
Appellant, in his fourth assignment of error, argues that the fine imposed by the trial court was improper. We agree.
The matter of sentencing generally rests within the sound discretion of the trial court, and an appellate court will not reverse the trial court's exercise of this discretion if the sentence imposed is within the limits authorized by the applicable ordinance and statutes. State v. Longo (1982), 4 Ohio App.3d 136,141; Toledo v. Reasonover (1965), 5 Ohio St.2d 22.
Where an ordinance provides that "each day during which noncompliance or a violation continues shall constitute a separate offense" (or similar language), it has been held that a defendant may be found guilty and sentenced for daily violations. City ofCleveland v. Modic (Dec. 17, 1992), Cuyahoga App. No. 673674, unreported; see, also, City of Brecksville v. Marchetti (Nov. 22, 1995), Cuyahoga App. No. 67719 67722, unreported. However, where an offense (which may be part of one continuous sequence of events) is not designated in the statutory or ordinance language as being a separate offense for each day the offense is committed, the defendant cannot be charged with more than one violation. SeeBrown v. Ohio (1977), 432 U.S. 161, 170, fn. 8 (joyriding or auto theft which continued over a series of nine days can only constitute one offense).
In this case, a plain reading of the Rocky River Ordinance 78-03 shows that it does not provide that any violation of that ordinance will be considered as a separate offense for each day of noncompliance.[3] The penalties section provides that "[w]hoever violates any section of this Ordinance shall be fined not less than $25.00 nor more than $1,000, and the costs of prosecution." Rocky Ridge Ordinance 78-03, Section 8. Therefore, although the citation issued to appellant classified "each day being a separate offense," it cannot be enforced as a series of daily violations, absent applicable ordinance language. Consequently, the trial court abused its discretion in imposing a $5,000 fine which was beyond the $1,000 limit of the ordinance.
Accordingly, appellant's fourth assignment of error is well-taken.
The judgment of the Ottawa County Municipal Court is affirmed in part and reversed in part. This case is remanded to the Ottawa County Municipal Court for resentencing consistent with this decision.
Court costs of this appeal are assessed equally between the parties.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ James R. Sherck, J.
 Melvin L. Resnick, J., Richard W. Knepper, P.J.
[1] Appellant's indication of the value at $400 is apparently in reference to the citation form which states that R.C. 4513.65 and 4513.63 define a junk motor vehicle as:
"1) 3 years old or older
 "2) Extensively damaged, including but not limited to any of the following: missing wheels, tires, motor, or transmission
"3) Apparently inoperable
"4) Having a fair market value of $400.00 or less."
However, we note that R.C. 4513.63 was amended in 1997 and changed the fair market value to "one thousand five hundred dollars or less." We suggest that, to avoid confusion in the future, the form be updated to reflect the current statutory requirements.
[2] As has often been noted, "One man's trash is another man's treasure."
[3] Likewise, nothing in R.C. 4737.01 through 4737.11 or under Chapter 4500, which govern junk yards, provide for the operation without a license to be considered as separate offenses for each day of violation.