[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is an appeal of the verdict of the Lake County Court of Common Pleas, finding appellant, Michael DeRose, guilty of felonious assault, in violation of R.C. 2903.11(A)(1).
There are very few undisputed facts in this case. However, it is clear that, on the night of April 1, 1999, Robert Mercer ("Mercer") attended a concert with his friend Lenny Schaefer ("Schaefer"). Over the course of the evening, Mercer had several alcoholic beverages, and became intoxicated. After the concert, Mercer and Schaefer stopped at a Denny's restaurant in Willoughby, Ohio.
At the restaurant, Mercer and Schaefer were seated at a booth close to where appellant, Robert Schieser ("Schieser"), Joe Merkys, and Ryan O'Neil were sitting. Tensions built between the two groups. Appellant and the group with him left the restaurant before Mercer and Schaefer did and waited outside the front door of the restaurant for approximately 30 to 45 minutes.
When Mercer and Schaefer left the restaurant, a scuffle ensued between Schieser and Mercer. Appellant became involved in the scuffle, picked Mercer up by the waist, and dropped him to the ground. Mercer sustained a skull fracture and was knocked unconscious.
Appellant was arrested and charged with felonious assault. Appellant's first trial ended with a hung jury, and appellant was re-tried. In appellant's second trial, the jury returned a verdict of guilty of felonious assault charge. Appellant was sentenced to a definite term of four years in prison.
Appellant raises the following assignments of error:
 "[1.] The trial court committed prejudicial error by restricting cross-examination of the complaining witness in violation of an accused's right to confront witnesses."
 "[2.] The Trial Court erred, to the prejudice of appellant, when it refused to permit a defense exhibit into the jury room during jury deliberation."
 "[3.] The trial court erred, to the prejudice of appellant, in its instructions to the jury on the issues of self-defense and defense of another."
 "[4.] Appellant was denied a fair trial by reason of improper argument by the prosecuting attorney."
 "[5.] Appelant was denied due process of law and the right to a fair trial based on the cumulative errors of the trial court and the Prosecutor."
 "[6.] Appellant's conviction for felonious assault is against the sufficiency and/or weight of the evidence."
In his first assignment of error, appellant argues that the court's restriction on his cross examination of Mercer was error, because he was not permitted to question Mercer at length about his prior employment at the Denny's restaurant where the assault occurred. Appellant was permitted to question Mercer on his work history, including the fact that he had been employed at the restaurant and had been let go from his employment at the restaurant, but, after eliciting this testimony, the court would permitted no more questions into Mercer's work background. The court informed appellant that Mercer's work history had nothing to do with the case and that appellant should get on with issues relevant to the case.
Later, appellant made an offer of proof, indicating that, if he had been permitted to question Mercer on his employment, he would have shown prejudice on the part of the employees who were working the night of the incident and would have shown that the police were not called sooner because Mercer asked the employees not to call the police. In addition, appellant would have shown that Mercer had been let go from the restaurant because he was suspected of stealing.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. In general, relevant evidence is admissible, unless some other provision of law makes it inadmissible, and irrelevant evidence is inadmissible. Evid.R. 402.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Trial courts also have broad discretion in determining whether evidence is relevant or irrelevant. State v.Sanders, 92 Ohio St.3d 245, 259, 2001-Ohio-189.
Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Though this threshold determination is low, it is clear that, for any evidence to be relevant, the facts it seeks to establish must be of consequence. In the case sub judice, to the extent that the testimony was intended to rebut the appearance of a sterling employment record created by the prosecutor, evidence of Mercer's employment at and termination from the restaurant is relevant as rebuttal evidence. This appearance was rebutted, however, when Mercer admitted that he had been employed at the restaurant and had been fired.
The sort of further exploration proposed by appellant, and the sort of information appellant alludes to in his proffer, however, was not relevant. The question of why the police were not called to the scene before the assault occurred is not of consequence to the question of whether appellant feloniously assaulted Mercer. Furthermore, the issue of whether any employees at the restaurant were prejudiced toward Mercer is not relevant, as no restaurant employees testified at trial. Bias of a person who is not a witness is not a relevant issue.
The allegations that Mercer was fired from the restaurant because of the theft of money from the restaurant are likewise irrelevant to whether appellant assaulted Mercer on the night in question. The use of these allegations to impeach Mercer's credibility, as appellant suggests in his proffer and his brief, is likewise improper.
Evid.R. 608(B) provides that
 "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness. * * *."
Appellant wanted to question Mercer regarding the suspicion of a past theft, for which Mercer was never arrested or prosecuted. The offense of theft, however, is not an offense that is clearly probative of truthfulness or untruthfulness because it does not necessarily involve telling a falsehood. See Cindric v. Edgewater Yacht Club of Cleveland
(May 2, 1996), 8th Dist. No. 68365, 1996 Ohio App. LEXIS 1793, at *16. Because the testimony appellant was attempting to elicit was not clearly probative of truthfulness, the court did not abuse its discretion by limiting appellant's cross-examination of that issue. Appellant's first assignment of error is without merit.
In appellant's second assignment of error, he argues that the court erred by ruling that a defense exhibit, a one hundred sixty pound fireman's training dummy, could not be taken into the jury room.
At trial, appellant presented as evidence a one hundred sixty pound dummy, used to train firemen to carry victims from burning buildings. The state stipulated that the dummy was approximately the same weight as Mercer, and stipulated to its admission at trial. At the close of evidence, appellant requested that the dummy be placed in the jury room during jury deliberations. The court denied appellant's request, informing appellant that it was too large and unwieldy to be kept in the cramped jury room. The court agreed to keep the dummy in the courtroom and to allow jurors who wanted to view the dummy or pick it up to do so by making a request of the court.
The court did not tell the jury, as part of his instructions, that they could request to come into the courtroom and pick up the dummy, but the court did permit appellant's attorney to tell the jury in closing argument that the dummy would be in the court room for them to examine if they wished to. Appellant's attorney did in fact tell the jury this, and encouraged the jury to try to pick up the dummy.
While it is common practice for exhibits admitted into evidence to be sent to the jury room, it is within the trial court's discretion to determine which evidence should be sent to the jury room. C. T. TaylorCo. v. Melcher (1983), 13 Ohio App.3d 6, 6-7. In the instant case, the court determined that, because of the size and weight of the exhibit, it would be kept in the courtroom rather than the cramped confines of the jury room. The trial court permitted appellant's counsel to inform the jury that the dummy would be available, and even to encourage the jury to come into the courtroom to try and pick it up. This was proper, and not an abuse of discretion. Appellant's second assignment of error has no merit.
In appellant's third assignment of error, he argues that the trial court erred by failing to give the jury instructions on self defense and defense of others that he requested. At the close of evidence, appellant requested that the court give the instruction for self-defense against danger of bodily harm and defense of another from Ohio Jury Instructions (2001), Section 411.33, at 77-78, which pertains to misdemeanor self-defense and reads in relevant part:
 "To establish self-defense, the defendant must prove: * * * (B) the defendant had reasonable grounds to believe and an honest belief, even though mistaken, that he/she was in (imminent) (immediate) danger of bodily harm and that his/her only means to protect himself/herself from such danger was by the use of force not likely to cause death or great bodily harm."
The state argued that there was insufficient evidence to support an instruction from 4 Ohio Jury Instructions (2001), Section 411.33, but did not object to the court giving an instruction on self-defense against danger of death or great bodily harm from 4 Ohio Jury Instructions (2001), Section 411.31, which pertains to felony self-defense. 4 Ohio Jury Instructions (2001), Section 411.31, at 75-76 provides, in relevant part:
 "To establish self-defense the defendant must prove: * * * (B) he/she had reasonable grounds to believe and an honest belief that he/she was in (imminent) (immediate) danger of death or great bodily harm, and that his/her only means of (retreat) (escape) (withdrawal) from such danger was by the use of deadly force * * *."
The judge stated that he was not inclined to give a self-defense instruction at all, but would give the instruction from 4 Ohio Jury Instructions (2001), Section 411.31. The judge did not give an instruction on defense of another.
Appellant was charged with felonious assault for dropping Mercer on his head on the paved parking lot, and was not charged with any lesser-included offenses. Thus, the state had to prove that appellant knowingly caused serious physical harm to another. R.C. 2903.11(A)(1). 4 Ohio Jury Instructions (2001), Section 411.33, the instruction requested by appellant, would have informed the jury that self-defense can be found when the defendant has not used force likely to cause death or great bodily harm. Because the state had to prove that appellant caused serious bodily harm to Mercer, the instruction limited to force not likely to cause death or great bodily harm would be inapplicable. If appellant had used force not likely to cause death or great bodily harm, he could not be found guilty of felonious assault, as a matter of law. See State v.Wagner (July 14, 2000), 11th Dist. No. 99-L-043, 2000 WL 973421, at *3.
Deadly force is defined as "any force that carries a substantial risk that it will proximately result in the death of any person." R.C.2901.01(A)(2). Dropping a one hundred sixty-pound adult on his head to hard pavement from a distance of three or four feet certainly carries a substantial risk of death. The state adduced evidence from its medical expert, Dr. Heather Raff, that the injury caused by appellant dropping Mercer to the pavement, head first, carried a significant risk of death. That Dr. Raff used the word "significant" rather than "substantial" when speaking of Mercer's risk of death, as argued by appellant, is merely an issue of semantics, and does not change the fact that appellant used deadly force against appellant. Thus, the felony self-defense instruction was warranted.
Appellant also argues that the trial court should have given an instruction on defense of others, arguing that Mercer punched Schieser and appellant was defending his friend from Mercer's attacks. Based on the level of force used by appellant against Mercer, appellant would have to show that he had reasonable grounds to believe, and an honest belief that, Schieser was in imminent danger of death or great bodily harm; that the only way to prevent it was through the use of deadly force; and, that he had not violated any duty to retreat. 4 Ohio Jury Instructions (2001), Section 411.31(5), at 76, See also State v. Robbins (1979),58 Ohio St.2d 74, paragraph two of the syllabus.
There is no evidence in the record, from any source, including appellant himself, that would indicate that either Schieser or appellant was in imminent danger of death or great bodily harm. There was no evidence that Mercer was armed with a weapon or that he was getting the better of the fight with Schieser and appellant when appellant picked him up and dropped him onto the pavement. In fact, neither appellant nor Schieser testified that he believed that either of them was in imminent danger of death or great bodily harm. Thus, the facts adduced at trial did not support a jury instruction on the affirmative defense of defense of others, and the court did not err by refusing to give the instruction.
Appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant argues that certain statements made during the course of the prosecutor's closing argument constitute prosecutorial misconduct. In support of this argument, appellant cites several comments from the prosecutor's closing argument that, appellant argues, constitute the prosecutor stating his personal opinion as to the credibility of witnesses and the guilt of appellant.
"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984),14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Smith,87 Ohio St.3d 424, 442, 2000-Ohio-450, quoting Smith v. Phillips (1982),455 U.S. 209, 219.
Appellant objected to only one of the prosecutor's remarks during the closing argument. Thus, for the other comments, appellant has waived all but plain error. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990), 20 Ohio St.3d 58, 62. In addition, "[n]otice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
The statements which appellant cites as evidence of misconduct, but to which appellant did not object at trial, are generally comments upon the evidence adduced at trial, rather than the prosecutor's personal opinion on the credibility of witnesses and the guilt of appellant. In any case, they do not, read separately or read together, rise to the level of plain error.
In the statement to which appellant objected, the prosecutor stated:
 "All that happened here that transpired in this case was a ton of evidence about character. [Defense counsel] tried to turn this case into one about Mr. Mercer's character, his intoxication that evening. His intoxication has nothing to do with this, ladies and gentlemen, drunken people don't deserve to get dropped on their head [sic], that's not the law in the State of Ohio. The law protects drunken people as well as it does sober people. I don't care if you're Jack-the-Ripper, I don't care what your character is, a person's character is not relevant to a criminal case although that's typically when there is no issues, that's what the defense attorneys like to do is divert the focus from what really the elements of the case are to the frivolous issues relating to character, intoxication, things of that nature."
The courts look with disfavor upon comments denigrating defense counsel for doing his or her job. State v. Getsy (1998), 84 Ohio St.3d 180, 194,1998-Ohio-533. The comments made by the prosecutor about defense counsel were clearly improper. See id. However, appellant made Mercer's intoxication an issue in the case, and in this case, as in Getsy, supra, the comments about defense counsel occurred only in closing argument and were not pervasive. "In the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Stephens (1970), 24 Ohio St.2d 76, 82. Thus, the prosecutor's comment did not prejudice a substantial right of appellant. Appellant's fourth assignment of error is without merit.
In appellant's fifth assignment of error, he argues that the cumulative errors by the trial court and the prosecutor deprived him of a fair trial. Appellant first notes that his preceding four assignments of error deprived him of a fair trial. Although an appellant's assignments of error individually do not have merit, collectively they might; however, as presented in this case, they do not show that the trial court failed to give him a fair trial.
Appellant next references several statements by the trial court and intimates that these comments reveal a resolve by the court to hinder the presentation of appellant's case.
In the first such comment, appellant quotes the court as saying, "you're going to have a problem with me today." Taken in context, the court's statement, made out of the hearing of the jury, is as follows:
 "THE COURT: Not his work history, his work history has nothing to do with this case.
"MR. TALIKKA: He was fired.
 "THE COURT: I don't care what happened, I don't care what happened, I'm telling you, Mr. Talikka, you're going to have a problem with me today —
"MR. TALIKKA: Okay
 THE COURT: — unless you stick to the issues of the case."
Taken in context, the court's statement was merely a warning to defense counsel that the court would not permit him to continue trying to explore a topic that the court had already ruled was irrelevant to the case.
Appellant next explains that the court yelled at defense counsel when he tried to have the fireman's dummy admitted into evidence. While it is true that the court yelled at defense counsel, the incident was not about the admission of the dummy into evidence. As the court made clear in chambers, outside the hearing of the jury, the court was yelling because defense counsel had argued with the court over the admission of the exhibit, in open court, in front of the jury. The court was not angry about the fact that defense counsel wanted the exhibit entered into evidence; the dummy was admitted into evidence. Rather, the court was angry about the manner in which defense counsel chose to conduct himself before the jury. This does not show that appellant was denied a fair trial.
Appellant cites as the "most extreme of the trial court's comments" a statement the court made in chambers, outside the hearing of the jury, that "I'm not going to run to the library and look up your citations." This exchange occurred as the parties were discussing jury instructions. In the midst of a discussion, running twenty three pages of transcript on a single jury instruction, defense counsel indicated that he had done research the night before, and had some cases to support his position. The court asked for the cases, and defense counsel stated that all he had were the citations. The court remarked that he wanted copies of the cases, and that he was not going to run to the library to look up the cases. Defense counsel then went on to discuss the import of the cases.
Far from showing unwillingness on the part of the court to consider appellant's arguments for his proposed jury instructions, this shows that the court was willing to, and did consider appellant's arguments at length. Indeed, the court gave an instruction on self-defense, even though the court did not believe that the evidence presented at trial warranted such an instruction. This does not show that appellant received less than a fair trial. Appellant's fifth assignment of error is without merit.
In his sixth assignment of error, appellant argues that his conviction was based on insufficient evidence and that his conviction was against the manifest weight of the evidence.
When an appellate court examines a criminal conviction for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
The essential elements of the crime of felonious assault are that the defendant knowingly caused serious physical harm to another. Viewing the evidence in a light most favorable to the prosecutor, testimony showed that appellant picked Mercer up off of the ground, carried him a few steps, and dropped him onto the paved parking lot head first. Testimony also shows that Mercer was knocked unconscious as a result of his impact with the pavement, and that Mercer sustained a fractured skull, bleeding and bruising of the brain, hearing loss, and was hospitalized for nine days as a result of these injuries.
Viewing the evidence in a light most favorable to the prosecution, a reasonable jury could have found beyond a reasonable doubt that all of the elements of felonious assault had been proved. Thus, there was sufficient evidence to convict appellant.
When a court reviews a criminal verdict to determine whether it is against the manifest weight of the evidence, it:
 "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 1997-Ohio-52.
Appellant argues that because Mercer forgot details such as how much he had to drink that night, the fact that he had a warrant for his arrest, and his behavior at the restaurant before the affray, appellant's conviction should be considered against the manifest weight of the evidence. All of these things pointed out by appellant are collateral to the issue of whether appellant is guilty of felonious assault.
However, even if we were to discount Mercer's testimony entirely, appellant's conviction is still not against the manifest weight of the evidence. Though each witness's testimony differed in some respects, the elements of the offense were established by the testimony of the witnesses, including the only witness who was not a friend of either party and the testimony of appellant himself.
Appellant's sixth assignment of error is without merit.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY, J., concurs, WILLIAM M. O'NEILL, P.J., dissents with a Dissenting Opinion.