OPINION
{¶ 1} Steven Hawkins-Hall appeals from his conviction and sentence following a no-contest plea to charges of possession of criminal tools, possession of cocaine, tampering with evidence, and cocaine trafficking. *Page 2 
 {¶ 2} Hawkins-Hall advances two assignments of error on appeal. First, he contends the trial court erred in failing to dismiss the evidence-tampering charge. He asserts that the charge was unfair and unconstitutionally disproportionate as applied to him. Second, he claims the trial court erred in failing to suppress cocaine police found in a bedroom. He argues that suppression was required because police lacked either permission or a warrant to enter and search the bedroom.
 {¶ 3} Most of the uncontroverted facts, taken from a suppression hearing transcript, are set forth in the State's appellate brief as follows:
 {¶ 4} "* * * Dayton Police Detective David House witnessed what he believed, based on his experience as a narcotics detective, to be the precursor of a drug transaction at a pay phone in the parking lot of a gas station, so he followed the vehicle involved to an address on Euclid Street. (Transcript of Suppression Hearing, Dec. 14, 2006, 6-11). Once on Euclid, he watched as the vehicle parked at 113 South Euclid, where he also saw Hawkins-Hall standing on the sidewalk at the bottom of the stairs leading to the porch of that address. Id. The front seat passenger of the vehicle House had been following exited, and the passenger and Hawkins-Hall made contact with one another. Id. They walked northbound on Euclid together and turned the corner onto Mercer Street. Id. On Mercer Street, Detective House observed the two men engage in what he believed to be an open air drug transaction. Id.
 {¶ 5} "After the front seat passenger returned to the vehicle and the vehicle went on its way, other officers stopped it and discovered one gram of crack cocaine on the passenger floor near where they saw the passenger reaching as the car was being stopped. Id. Detective House also responded to the stop and interviewed the front seat *Page 3 
passenger, who denied that he had engaged in a drug transaction with Hawkins-Hall. Id. Ultimately, Detective House and Detectives Joe Meyers and Greg Gaier returned to 113 South Euclid and entered the home with the permission of its resident, Angela Bowman. (Tr. 12-14).
 {¶ 6} "Once inside, Detective House asked Bowman if a young black male had entered the home just a few moments earlier. Id. She answered in the affirmative and told the detectives that he was upstairs. Id. When the detectives told Bowman that they needed to talk to the young black male, she answered, `Okay.' (Tr. 27-30). After a several-second pause where the woman did not call to the young man, the detectives proceeded upstairs, where they encountered Hawkins-Hall in the hallway at the top of the stairs. (Tr. 12-14).
 {¶ 7} "Detective House testified that when he got to the top of the stairs, he heard the toilet running in the bathroom at the end of the hall, so he walked past Hawkins-Hall and looked in. (Tr. 14-17). He saw the toilet had just been flushed, and given that he had just witnessed what he believed to be a drug transaction, he was concerned that Hawkins-Hall may have flushed evidence. Id. He exited the bathroom and returned to Hawkins-Hall, then handcuffed him and patted him down, finding a digital scale with what appeared to be crack cocaine residue on it. Id. As a result, he placed Hawkins-Hall under arrest for possession of criminal tools. Id. In a search incident to that arrest, Detective House also discovered seven empty sandwich baggies in Hawkins-Hall's pocket. Id.
 {¶ 8} "Once Detective House discovered the empty baggies, he gave Hawkins-Hall his Miranda warnings, which Hawkins-Hall acknowledged he understood. Id. Then *Page 4 
House asked Hawkins-Hall if he wanted to tell the detective what was going on. (Tr. 17-18). Hawkins-Hall told Detective House that he had exchanged money with the passenger of the vehicle that detectives had stopped earlier, and House asked him where it was. Id. Hawkins-Hall led the detectives to a bedroom, where Detective Gaier saw another baggie containing small crumbs of what also appeared to be crack cocaine. (Tr. 18-21). Hawkins-Hall admitted it was his, saying, `Yeah, that's what I do. I do rocks.' Id." (Appellee's brief at 1-3).
 {¶ 9} As a result of the foregoing incident, Hawkins-Hall was charged with the four counts set forth above. Following his pursuit of an unsuccessful motion to dismiss the evidence-tampering charge and an unsuccessful motion to suppress, Hawkins-Hall entered his no-contest plea. The trial court sentenced him to five years of community control. This timely appeal followed.
 {¶ 10} In his first assignment of error, Hawkins-Hall contends the trial court erred in overruling his motion to dismiss the evidence-tampering charge. For purposes of this assignment of error, he admits telling police that he flushed drug money and a couple of "rocks" of crack cocaine down the toilet just before Detective House met him upstairs. Hawkins-Hall advances several theories, however, to support his claim that it was improper for the State to prosecute him for tampering with evidence.
 {¶ 11} Hawkins-Hall first notes that the evidence-tampering charge was a third-degree felony, whereas all of the other charges against him were fifth-degree felonies. In light of this difference, he asserts that the State unfairly "raised" his offense level and the potential penalty by pursuing the evidence-tampering charge. This argument lacks merit. Contrary to Hawkins-Hall's contention, the State did not "raise the level of the *Page 5 
actual offense from a fifth degree felony to a third-degree felony." Hawkins-Hall simply committed multiple offenses of different levels. The legislature enacted a statute, R.C. 2921.12(A)(1), making it a third-degree felony to destroy evidence knowing that an investigation is in progress. Hawkins-Hall violated the statute when he flushed drug money and crack cocaine down the toilet as House ascended the stairs. The elements of Hawkins-Hall's possession and trafficking charges do not involve the purposeful destruction of evidence. Therefore, we find no merit in his argument that the State improperly raised his offense level. To the contrary, Hawkins-Hall committed different offenses, most of which were fifth-degree felonies and one of which was a third-degree felony.
 {¶ 12} Hawkins-Hall also cites State v. Volpe (1988),38 Ohio St.3d 191, and similar cases for the proposition that, absent legislative intent to the contrary, a specific statute takes precedence over a general statute. In Volpe, the court held that a general possession-of-criminal-tools statute could not be used to prosecute the defendants for possession of a gambling device. The court reached this conclusion because another more specific statute made the possession of a gambling device a misdemeanor. The court reasoned that when the legislature makes the possession of specific items a misdemeanor, the felony criminal-tools statute does not apply. Id. at 193-194.
 {¶ 13} Relying on Volpe and its progeny, Hawkins-Hall argues by analogy that the legislature has enacted specific statutes prohibiting the possession of and trafficking in drugs. Therefore, he reasons that the State cannot prosecute him under the more general evidence-tampering statute. But the possession and trafficking statutes do not reach the same conduct as the evidence-tampering statute. Thus, the present case is *Page 6 
distinguishable from Volpe, which turned largely on the fact that the felony possession-of-criminal-tools statute and misdemeanor possession-of-a-gambling-device statute both regulated the same conduct by the defendants. Id. at 193.
 {¶ 14} Hawkins-Hall next raises an Eighth Amendment issue, relying primarily on State v. Gilham (1988), 48 Ohio App.3d 293. InGilham, the Eighth District held that a defendant who engaged in misdemeanor solicitation of prostitution from a car could not be convicted of felony possession of criminal tools based on her use of the vehicle. The Gilham court opined that "had appellant been walking on foot instead of using an automobile for transportation, she would not have been charged with possession of criminal tools, i.e., her shoes. Instead, like the average street prostitute, she would have been charged with a misdemeanor instead of a felony offense." Id. at 295. The court held that a conviction for possession of criminal tools under such circumstances was excessive and grossly disproportionate in violation of the Eighth Amendment. Id.; see also State v. Parson (1990),67 Ohio App.3d 201, 205-206 (citing Gilham and finding that the State disproportionately enhanced the defendant's misdemeanor offense of keeping a place where alcohol is furnished by charging him with felony possession of criminal tools for using a jukebox and television in the same area); State v. Harlan (1995), 105 Ohio App.3d 756, 759-760 (citingGilham and holding that the felony possession-of-criminal-tools statute could not be applied in cases where the underlying offense is a misdemeanor).
 {¶ 15} Even assuming, purely arguendo, that the foregoing cases from other *Page 7 
appellate districts were correctly decided,[1] they fail to help Hawkins-Hall. At best, they might support the proposition that Hawkins-Hall could not be charged with felony evidence tampering if his other related crimes were misdemeanors. But see State v. Overholt (Jan. 5, 2000), Medina App. No. 2929-M (holding that the defendant could be charged with felony evidence tampering even though the evidence related to a crime that was a misdemeanor). As the Tenth District has recognized in distinguishing Gilham, a felony conviction for possession of criminal tools is not unconstitutionally disproportionate when the underlying related crime is a felony. State v. Williams (1993), 89 Ohio App.3d 288,292. Here Hawkins-Hall's other drug-related offenses were fifth-degree felonies, not misdemeanors. Under such circumstances, we find nothing grossly disproportionate about charging him with third-degree felony evidence tampering based on his additional act of flushing drug money and crack cocaine down the toilet. As the Ninth District recognized inOverholt, tampering with drug evidence reasonably can be treated as a more serious offense than simply possessing the same evidence.Overholt, supra.
 {¶ 16} Hawkins-Hall next contends it is unfair for him to be charged with evidence tampering when many defendants throughout Montgomery County and the State of Ohio engage in similar conduct but are not so charged. He raises this argument in the context of an equal-protection challenge. In order to prevail, Hawkins-Hall must establish that other similarly situated defendants were not prosecuted for evidence tampering and *Page 8 
that he was prosecuted for some impermissible reason such as race, religion, etc. State v. Freeman (1985), 20 Ohio St.3d 55, 58. "A mere showing that another person similarly situated was not prosecuted is not enough; a defendant must demonstrate actual discrimination due to invidious motives or bad faith. Intentional or purposeful discrimination will not be presumed from a showing of differing treatment." Id.
 {¶ 17} Hawkins-Hall has alleged, but not actually shown, that many defendants who tamper with evidence under similar circumstances are not prosecuted. This assertion falls far short of establishing an equal protection violation. Moreover, with regard to intentional or purposeful discrimination, Hawkins-Hall asserts only that the State added the evidence-tampering charge after he rejected a plea bargain and pursued his pretrial suppression motion. Even if this assertion is true, Hawkins-Hall has not established unlawful prosecutorial vindictiveness or even raised a presumption of the same. See, e.g., United States v.Goodwin (1982), 457 U.S. 368, 380 ("For just as a prosecutor may forego legitimate charges already brought in an effort to save time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.").[2] *Page 9 
 {¶ 18} Finally, Hawkins-Hall argues that without his admission to flushing cocaine and drug money down the toilet, there would be insufficient evidence to convict him on the tampering charge. He reasons that "[p]robabilities alone suggest the toilet was used biologically rather than criminally." This argument ignores the undisputed fact that Hawkins-Hall did admit the conduct at issue. He provides no reason why his admission should be ignored, and we see no reason. Accordingly, we overrule his first assignment of error.
 {¶ 19} In his second assignment of error, Hawkins-Hall argues that the trial court erred in failing to suppress the cocaine found in his bedroom. He advances two arguments in support. First, he contends the detectives lacked permission from Angela Bowman, a resident of the home, to proceed upstairs to speak with him. Second, he asserts that neither he nor Bowman authorized the detectives to enter and search his upstairs bedroom. In connection with this argument, Hawkins-Hall claims the State failed to prove that the cocaine found in the bedroom was in plain view.
 {¶ 20} Upon review, we find the foregoing arguments to be without merit. Hawkins-Hall concedes that Bowman granted the detectives permission to enter her home. Once inside, the detectives learned from Bowman that Hawkins-Hall was upstairs. (Tr. 13). Detective House advised her that they needed to speak to him. (Id.). Bowman responded, "Okay." She then paused for several seconds without saying or doing anything else. (Id.). Based on the way Bowman said, "Okay," specifically her voice inflection, House interpreted the remark to mean the detectives could proceed upstairs to speak to Hawkins-Hall. (Id. at 29).
 {¶ 21} The trial court found it objectively reasonable for House to construe *Page 10 
Bowman's response as granting the detectives permission to go upstairs to talk to Hawkins-Hall. (Doc. #15 at 15). We see no error. Hawkins-Hall suggests that Bowman's response may have been intended as a mere acknowledgment of House's desire to talk to him. While this is possible, House explained that Bowman's voice inflection in particular led him to believe her response was an expression of consent for the detectives to proceed upstairs. This interpretation of the remark is consistent with Bowman's other cooperative actions. Immediately before making the remark, she permitted the detectives to enter her home and told them Hawkins-Hall was upstairs. She then said "Okay" when House told her that he wanted to speak to Hawkins-Hall. In this context, the trial court correctly found it objectively reasonable for House to interpret Bowman's response as an expression of consent to proceed upstairs. SeeState v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 99 ("The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., what a typical reasonable person would have understood by the exchange * * *.").
 {¶ 22} Hawkins-Hall's argument about the cocaine found in his bedroom is equally unpersuasive. Upon encountering Hawkins-Hall upstairs, House placed him in handcuffs for purposes of conducting a weapons pat-down.[3] (Tr. 15-16). As he patted Hawkins-Hall's rear pants pocket, House felt what he immediately recognized as a small digital scale. (Id. at 16). House removed the scale and observed what appeared to be *Page 11 
cocaine on it. At that point, he placed Hawkins-Hall under arrest for possession of criminal tools. House then searched Hawkins-Hall incident to the arrest and found seven empty sandwich baggies in his pocket. (Id.). While standing in the hallway, House advised Hawkins-Hall of hisMiranda rights. (Id. at 17). Hawkins-Hall then made a statement about having money from the drug transaction the detectives had witnessed earlier. (Id. at 18). House asked where the money was located. Hawkins-Hall responded that it was in his bedroom. The officers then followed as Hawkins-Hall led them toward a bedroom doorway. Just before Hawkins-Hall reached the doorway, Detective Gaier stepped inside ahead of him. (Id. at 19). Hawkins-Hall then entered the bedroom while House waited right outside in the hallway. (Id. at 19, 33-34). From that vantage point, House observed Gaier pick up a baggie of cocaine that was sitting on a dresser top inside the doorway. (Id. at 20, 34). When Gaier inquired about the baggie, Hawkins-Hall admitted that he smokes crack cocaine. (Id. at 20).
 {¶ 23} Hawkins-Hall complains that House and Gaier lacked permission to enter and search the bedroom. In its suppression ruling, however, the trial court concluded that the detectives were authorized to accompany Hawkins-Hall into the bedroom, where the cocaine was observed in plain view. Because Hawkins-Hall was under arrest, the trial court concluded that his act of walking toward the bedroom made it reasonable for the detectives to accompany him. We agree. It was objectively reasonable for the officers to construe Hawkins-Hall's actions as an implicit invitation to follow him. Immediately after telling the detectives that the drug money was in his bedroom, Hawkins-Hall began walking in that direction. Under the circumstances, Hawkins-Hall reasonably should have expected the detectives to accompany him. *Page 12 
 {¶ 24} Finally, we reject Hawkins-Hall's contention that the State failed to prove the cocaine on the dresser top was in plain view. From his position just outside the bedroom, House watched Gaier go over to a dresser near the doorway and pick up a baggie containing the drugs. (Id. at 20, 33-34). As set forth above, Gaier had a right to be in the bedroom, and House's testimony supports a finding that the baggie was in plain view on the dresser top. Accordingly, the second assignment of error is overruled.
 {¶ 25} The judgment of the Montgomery County Common Pleas Court is affirmed.
FAIN, J., and WALTERS, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, (sitting by assignment of the Chief Justice of the Supreme Court of Ohio)
Copies mailed to:
Mathias H. Heck, Jr. Jill R. Sink Richard A. Nystrom Hon. Dennis J. Langer
[1] Cf. State v. Weitbrecht, 86 Ohio St.3d 368, 374,1999-Ohio-113 (holding that the felony involuntary manslaughter statute, "as applied to a minor misdemeanor traffic offense which results in a vehicular homicide, does not violate the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution").
[2] "There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized." Goodwin, 457 U.S. at 381. "In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some `burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." Id.
[3] On appeal, Hawkins-Hall has not challenged the propriety of the weapons pat-down or House's use of handcuffs to secure him during the frisk. In any event, House explained that he performed the pat-down for his own safety. (Tr. 16). He was concerned that Hawkins-Hall, a suspected seller in a drug transaction, might be armed. (Id.). House secured Hawkins-Hall in handcuffs because there were numerous upstairs rooms that had not been checked and he was concerned about the potential presence of accessible weapons or other people. (Id.). *Page 1