[Cite as *Cleveland v. Schmidt*, 2013-Ohio-1547.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98603

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## ROBERT K. SCHMIDT

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2011 TRD 062659

**BEFORE:** E.T. Gallagher, J., Stewart, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** April 18, 2013

**FOR APPELLANT**

Robert K. Schmidt, pro se
1721 Fulton Road
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law
City of Cleveland
Department of Law
601 Lakeside Avenue
Room 106
Cleveland, Ohio   44114-1077

Angela Rodriguez
Assistant City Prosecutor
City of Cleveland
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Robert Schmidt ("Schmidt") appeals a judgment from the Cleveland Municipal Court finding him guilty of driving on sidewalks. He also appeals the denial of his motion to dismiss. We find no merit to the appeal and affirm.

{¶2} Schmidt was charged by Case Western Reserve University campus police with three violations: willfully fleeing and eluding, driving on sidewalks, and driving without a seatbelt. At a hearing on his motion to dismiss, Schmidt testified that he parked his car on the southeast corner of Parcel 94, which is Case Western Reserve University ("CWRU") property. The front end of his car passed over the sidewalk so that the front half of his car was on CWRU property and the rest of his car was on the city of Cleveland sidewalk. He had parked there for approximately six minutes while he dropped off groceries at a nearby dormitory where his girlfriend lived.

{¶3} Sergeant Jay Hodge ("Hodge") of the CWRU police department testified that as he was patrolling Juniper Drive, a residential street that runs through the CWRU campus, he observed Schmidt's car parked on the sidewalk with the hazard lights flashing. The wheels of the car were resting on bricks that surround a sculpture. Behind the sculpture, there was a fence with an opening to pedestrian walkways that lead to several dormitories. Hodge testified that this was not a parking area. As Hodge approached the car, Schmidt sprinted out of a dorm, got into the car, and drove away.

Hodge activated his siren and lights, Schmidt stopped, and Hodge issued two traffic citations and the fleeing and eluding citation.

{¶4} A jury trial began in the Cleveland Municipal Court on May 22, 2012. However, after completing voir dire and opening statements, the parties reached a plea agreement, and Schmidt pleaded no contest to the charge of driving on sidewalks, a minor misdemeanor. The other two charges were dismissed. Schmidt now appeals and raises seven assignments of error.

## CWRU Police Jurisdiction

{¶5} In the first assignment of error, Schmidt argues that his conviction is void because Hodge, who was acting as a private campus police officer, did not have authority to issue the traffic citations against him. In his third assignment of error, he argues the trial court erred in denying his motion to dismiss for lack of jurisdiction. We discuss these assigned errors together because they are closely related.

{¶6} R.C. 1713.50(C), which governs the jurisdiction of private campus police, provides:

> Each member of a campus police department appointed under division (B) of this section is vested, while directly in the discharge of that member's duties as a police officer, with the same powers and authority that are vested in a police officer of a municipal corporation or a county sheriff under Title XXIX of the Revised Code and the Rules of Criminal Procedure, including the same powers and authority relating to the operation of a public safety vehicle that are vested in a police officer of a municipal corporation or a county sheriff under Chapter 4511 of the Revised Code. * * * The board of trustees of a private college or university may enter into an agreement with any political subdivision pursuant to which the members of the campus police department of the college or university may exercise within that political subdivision, *but outside the property of the college or*

*university,* the powers and authority granted to them under this division. A member of a campus police department has no authority to serve civil process. (Emphasis added.)

**{¶7}** Thus, R.C. 1713.50 grants campus police officers the powers and authority to enforce the ordinances of the political subdivisions in which the private college or university is located on campus property. It may also authorize campus police to enforce local ordinances on city streets, sidewalks, and areas "outside the property of the college or university" as long as the campus police act pursuant to a valid mutual aid agreement. In this case, the mutual aid agreement between CWRU and the city of Cleveland was expired at the time Schmidt received his citations. In the absence of such an agreement, Hodge's authority to enforce local ordinances was confined to CWRU property.

**{¶8}** Schmidt contends the CWRU police did not have authority to issue a traffic citation because, under R.C. 1713.50, they have no authority to serve civil process. In support of his argument, Schmidt relies on Cleveland Codified Ordinances ("CCO") 459.02, which states that parking infractions are not criminal offenses. Therefore, Schmidt claims, the issuance of traffic tickets constitutes the illegal service of process. We disagree.

**{¶9}** Schmidt was convicted of violating CCO 431.37, which states: "*No person shall drive* any vehicle, other than a bicycle, *upon a sidewalk area* except upon a permanent or duly authorized temporary driveway." (Emphasis added.) The ordinance proscribes driving on sidewalk areas. Therefore, CCO 459.02, which governs civil liability for parking infractions, is inapplicable.

{¶10} Further, in *Warren v. Hill*, 11th Dist. No. 2003-T-0069, 2004-Ohio-6946, the court noted that, although an ordinance may state that parking infractions "shall not be considered a criminal offense for any purpose," such infractions are not actually decriminalized if they constitute minor misdemeanors. *Id*. at ¶ 21. In reaching its holding, the *Hill* court noted that the ordinance specifically stated that a violation of the ordinance is a minor misdemeanor.

{¶11} Violation of CCO 431.37 is not a parking violation, but is a minor misdemeanor. It is a criminal offense, and the issuance of the traffic ticket did not constitute service of civil process. Therefore, CWRU police had authority to issue traffic tickets.

{¶12} Schmidt admitted that the front end of his car was parked on CWRU property. The CWRU property was not "a permanent or duly authorized temporary driveway." According to Hodge, parking was prohibited in this area. Photographs of the scene show that the area is intended for pedestrian traffic. It is a sidewalk area paved with bricks encircling a sculpture. The walkways around the sculpture are paved with concrete. The front end of Schmidt's car was parked on the bricked sidewalk area and the back end of his car was blocking the entrance to a crosswalk.

{¶13} Schmidt contends, as he did in his motion to dismiss, that the area was "a permanent or duly authorized temporary driveway." In support of his argument, he offered into evidence numerous photographs of cars parked in the area. However, these photographs depict cars parked haphazardly. None of the cars are parked in the same

spot twice, and there are no painted lines to inform drivers how or where to park. The photographs tend to show that cars often park on the sidewalk area illegally rather than proving that the bricked area with a sculpture was a "duly authorized temporary driveway." Furthermore, Schmidt left his hazard lights flashing, which suggests he knew that driving and parking in this area was illegal. Therefore, despite Schmidt's statements to the contrary, this was neither a driveway nor a parking area.

{¶14} Schmidt's conviction, which relates solely to driving illegally on a sidewalk, was within both the officer's authority and the court's jurisdiction. The front end of his car was resting on CWRU property, which was not an authorized driveway. R.C. 1713.50(C) authorizes campus police officers to issue citations for local ordinance violations that occur on campus property even in the absence of a mutual aid agreement. Therefore, the court properly denied Schmidt's motion to dismiss the charge for lack of jurisdiction.

{¶15} Therefore, the first and third assignments of error are overruled.

## Finding of Guilt

{¶16} In the second assignment of error, Schmidt argues the trial court erred in finding him guilty. He contends the trial court breached its duty to find him not guilty where it was apparent that he was innocent.

{¶17} Pursuant to R.C. 2937.07, a judge may make a guilty or not guilty finding from the explanation of the circumstances of the offense. For a plea to a minor

misdemeanor, a judge is not required to call for an explanation of the circumstances of the offense and may base a finding on the facts alleged in the complaint.   R.C. 2937.07.

{¶18} By the time Schmidt entered his no contest plea, the trial court had already reviewed photographs of the area and heard testimony regarding the events giving rise to this case.  As previously explained, the evidence presented at the hearing demonstrated that Schmidt illegally drove his car on a sidewalk area.  When he parked, the front end of his car was resting on the bricked sidewalk area, which was CWRU property.  Under these circumstances, the court was justified in finding Schmidt guilty of driving on a sidewalk.

{¶19} Therefore, the second assignment of error is overruled.

### Discovery

{¶20} In the fourth assignment of error, Schmidt argues the trial court erred when it denied his motion for discovery of particular material and his renewed motion for discovery of particular material.   He contends the prosecution willfully withheld evidence from him, claiming it could not be obtained from CWRU, which was a private corporation not subject to public record laws.

{¶21} Crim.R. 16(B)(1)(f) requires the prosecutor to disclose "all evidence * * * favorable to the defendant and material either to guilt or punishment."   The rule's language, "favorable to the defendant and material to guilt or punishment," comes directly from *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed 2d 215 (1963), which held that the state must disclose "evidence favorable to an accused * * * where the

evidence is material either to guilt or to punishment." Therefore, the terms "favorable" and "material" in Crim.R. 16(B)(1)(f) have the same meaning as they do in *Brady* and its progeny. *State v. Keene*, 81 Ohio St.3d 646, 1998-Ohio-342, 693 N.E.2d 246.

{¶22} While *Brady* recognizes that the state may not withhold "material, exculpatory evidence," the prosecutor is not required to produce the entire file to the defense. He or she is only required to produce evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Favorable evidence under *Brady* includes both exculpatory and impeachment evidence, but the evidence must be both favorable and material before disclosure is required. *Id*., citing *Bagley,* 473 U.S. at 674. Evidence is material under *Brady* only if there exists a "reasonable probability" that the result of the trial would have been different had the evidence been disclosed to the defense. *Id*., citing *Kyles v. Whitley*, 514 U.S. 419, 433, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), quoting *Bagley* at 682.

{¶23} In the instant case, Schmidt claims the prosecution should have produced additional audio and video recordings of the incident as well as additional written and/or electronic documents generated by CWRU police as a result of Schmidt's citations. He claims this evidence could have been used to impeach Hodge's testimony. However, Hodge's testimony and the photographs taken at the scene demonstrate that Schmidt's car was straddling the sidewalk and resting on CWRU property. The property was neither a driveway nor a parking lot, and driving in that location was prohibited. Therefore,

Schmidt fails to establish that the result of the trial would have been different had the requested discovery been produced.

**{¶24}** Accordingly, the fourth assignment of error is overruled.

### Selective Prosecution

**{¶25}** In the fifth assignment of error, Schmidt argues the trial court erred in denying his motion to dismiss on the basis of selective prosecution. He contends the driving on sidewalks charge should have been dismissed because the prosecutor singled him out for prosecution in bad faith. He asserts that he was charged and prosecuted solely because he was not a CWRU student or faculty member.

**{¶26}** The decision whether to prosecute a criminal offense is generally within the prosecutor's discretion. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). That discretion is, however, subject to constitutional equal-protection principles, which prohibit prosecutors from selectively prosecuting individuals based on "'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.*, quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Although a selective- prosecution claim is not a defense on the merits to the criminal charge itself, a defendant may raise it as an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. *Armstrong*, 517 U.S. at 463.

**{¶27}** To establish a selective prosecution defense, a criminal defendant must make a prima facie showing:

(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*State v. Flynt*, 63 Ohio St.2d 132, 134, 407 N.E.2d 15 (1980).

**{¶28}** The defendant's burden of establishing discriminatory prosecution is a heavy one. *State v. Freeman*, 20 Ohio St.3d 55, 58, 485 N.E.2d 1043 (1985). "The mere failure to prosecute other violators of the statute which appellants were charged with violating does not establish the defense of selective prosecution." *Id*. Selectivity in enforcement does not constitute a constitutional violation unless the discrimination is "intentional or purposeful." *Flynt* at 134, quoting *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Moreover, the mere existence of a potential discriminatory purpose does not, by itself, show that such purpose motivated a particular defendant's prosecution. *Freeman* at 58.

**{¶29}** Schmidt fails to meet his burden of proving selective prosecution. In support of this defense, he provided several photographs of vehicles, purportedly owned and operated by CWRU personnel and students, that were parked on the sidewalk without being ticketed. However, he did not provide any evidence to establish that these vehicles were not, in fact, ticketed. He also failed to provide any evidence of bad faith. There is simply no evidence that the law was exclusively enforced against a particular class of persons such that the enforcement constituted a violation of Schmidt's right to equal

protection of the law.  Therefore, the trial court properly denied Schmidt's motion to dismiss.

{¶30} The fifth assignment of error is overruled.

## Judicial Notice of Statutory Laws

{¶31} In the sixth assignment of error, Schmidt argues the trial court erred in denying his request that the court take judicial notice of applicable municipal ordinances and statutes.

{¶32} Evid.R. 201 governs the trial court's ability to take judicial notice of adjudicative facts, or the facts of the case.  Civ.R. 44.1(A)(1) governs the court's ability to take judicial notice of law.  It states, "[j]udicial notice shall be taken of the rules of the supreme court of this state and of the decisional, constitutional, and public statutory law of this state."

{¶33} In this case, Schmidt requested that the court take judicial notice of the following proposed statements of law:

(1) A private university campus police officer has no authority to serve a City of Cleveland municipal parking ticket.

(2) Absent authorization by an effective agreement with the City of Cleveland, a private university campus police officer has no authority to make stops or arrests for misdemeanors occurring on Cleveland municipal streets or sidewalks.  (See Defendant's notice of reliance on municipal ordinances and state statutes and request for judicial notice to be taken thereof p. 1.)

{¶34} It is well established that a trial court is presumed to know the applicable law and apply it accordingly.  *Bush v. Signals Power & Grounding Specialists, Inc.*, 5th

Dist. No. 08 CA 88, 2009-Ohio-5095, ¶ 17. The trial court denied Schmidt's request to take judicial notice of the two statements of law, but stated it would consider his arguments and apply the law accordingly.

**{¶35}** Furthermore, the first proposed statement is not an accurate interpretation of the law. As previously stated, R.C. 1713.50 authorizes campus police officers to enforce municipal ordinances on campus property. Enforcement mechanisms include the issuance of traffic tickets, if the traffic infraction occurs on campus property. By Schmidt's own admission, he drove the front end of his car onto CWRU property, and therefore into the jurisdiction of the CWRU campus police. Therefore, we find no error in the trial court's decision denying the motion to take judicial notice.

**{¶36}** The sixth assignment of error is overruled.

### Prosecutorial Misconduct

**{¶37}** In the seventh assignment of error, Schmidt argues the trial court erred in denying his motion to dismiss on the basis of prosecutorial misconduct. He contends the prosecutor's offer to dismiss the charges against him in exchange for release of claims against CWRU police for any civil liability arising out of Schmidt's arrest constituted misconduct and warranted dismissal of the complaint.

**{¶38}** The United States Supreme Court has held that a prosecutor may appropriately negotiate an agreement whereby criminal charges are dropped in exchange for a release of 42 U.S.C. 1983 claims against a city and municipal officials. *Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987). As the court noted, "[i]n

many cases a defendant's choice to enter into a release-dismissal agreement will reflect a highly rational judgment that the certain benefits of escaping criminal prosecution exceed the speculative benefits of prevailing in a civil action." *Id*. at 394. As to the prosecutor's motivation, the court refused to assume that a prosecutor would bring frivolous charges or dismiss meritorious charges. *Id*. at 396.

**{¶39}** Dismissal-release agreements are not per se invalid. The *Newton* court acknowledged that such agreements may further legitimate public interests. *Id*. at 397. Where photographs and testimony establish that Schmidt's car was parked illegally on a sidewalk and CWRU property, the prosecution had probable cause to pursue the charges against him. Under these circumstances, we find that the prosecutor did not commit any misconduct in offering Schmidt the opportunity to sign a release of civil liability in return for a dismissal of his case.

**{¶40}** Accordingly, the seventh assignment of error is overruled.

**{¶41}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

MELODY J. STEWART, A.J., and
MARY EILEEN KILBANE, J., CONCUR