[Cite as *State v. Mack*, 2017-Ohio-8397.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101261**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CLARENCE MACK

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-91-262888-A

**BEFORE:** Celebrezze, J., Keough, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** November 2, 2017

**ATTORNEYS FOR APPELLANT**

John B. Gibbons
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113

Timothy F. Sweeney
The 820 Building, Suite 430
820 West Superior Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Katherine Mullin
        Joseph J. Ricotta
Assistant County Prosecutors
1200 Ontario Street, 8th Floor
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** This cause is before us pursuant to the February 22, 2017 remand from the Ohio Supreme Court for further review of our decision released June 4, 2015,[1] in view of the court's recent decision in *State v. Mack*, 148 Ohio St.3d 1409, 2017-Ohio-573, 69 N.E.3d 749. The Ohio Supreme Court directed this court to consider the merits of this appeal.

**{¶2}** Appellant, Clarence Mack, seeks review of the lower court's decision denying his successive petition for postconviction relief and motion for new trial. He argues that Ohio's postconviction procedures are unconstitutional, trial counsel was constitutionally ineffective, the state improperly withheld evidence at trial, and he met all the requirements for a successful postconviction petition and motion for new trial. After a thorough review of the record and law, we affirm the lower court's determination.

## I. Factual and Procedural History

**{¶3}** Appellant was convicted of the 1991 murder of Peter Sanelli, for which he was sentenced to death. The evidence established that appellant shot and killed Peter while he and Thomas Sowell were stealing Peter's car on Prospect Avenue in Cleveland. A detailed recitation of the evidence adduced at trial can be found in this court's opinion that resulted from appellant's direct appeal. *State v. Mack*, 8th Dist. Cuyahoga No. 62366, 1993 Ohio App. LEXIS 5758 (Dec. 2, 1993) ("*Mack I*"). In that opinion, this

---

[1] *State v. Mack*, 8th Dist. Cuyahoga No. 101261, 2015-Ohio-2149.

court affirmed appellant's convictions and sentence, overruling the following assigned errors:

1. [Appellant] was denied due process of law when the court denied his motion for discovery and inspection;

2. The trial court denied [appellant] due process when it overruled his motion for grand jury testimony;

3. The court denied [appellant's] right to be free from unreasonable search and seizure by overruling a motion to suppress evidence seized during a warrantless arrest;

4. The trial court denied [appellant] his right to a jury from a fair, impartial cross-section of the community, when it dismissed for cause jurors who expressed concern about the death penalty but stated they could follow the law;

5. The trial court denied [appellant's] right to a jury from a fair, impartial cross-section of the community, when it did not dismiss for cause jurors who believed death was the only proper sentence for someone convicted of felony murder;

6. [Appellant] was denied his right of confrontation when a non-examining coroner, Dr. Robert Challener, testified concerning an autopsy made by a non-testifying coroner;

7. [Appellant] was denied the right to confrontation when state witness Anthony Sanelli testified about out-of-court conversations he had with Timothy Willis;

8. [Appellant] was denied due process of law when the court permitted detective Edward Lucey to testify as an expert;

9. [Appellant] was denied his right against self-incrimination by the introduction of a statement made by [him] when he had not been advised of his constitutional rights;

10. [Appellant] was denied his right to defend himself by the exclusion of impeachment testimony against Timothy Willis;

11. [Appellant's] convictions are against the manifest weight of the evidence;

12. [Appellant's] right to life is violated by his conviction for a felony murder specification that was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt;

13. [Appellant] was denied his constitutional right to a fair and impartial jury at his trial by the introduction of gruesome and inflammatory photographs;

14. The court denied [appellant] his right to a fair, impartial jury when it allowed gruesome and inflammatory photographs during the penalty phase of his trial;

15. [Appellant] was denied his right to a trial by a jury by the improper jury instructions given during his trial;

16. [Appellant] was denied due process of law by the refusal to instruct on the lesser included offenses of murder and involuntary manslaughter;

17. [Appellant] was denied his right to effective assistance of counsel by counsel's failure to preserve the record;

18. [Appellant] was denied his constitutional right to a fair trial by the cumulative effect of all the errors that occurred during his trial;

19. Repeated prosecutorial misconduct denied [appellant] a fair trial;

20. [Appellant] was denied due process of law when the court improperly instructed the jury during the penalty phase;

21. [Appellant] was denied his right to effective assistance of counsel during the penalty phase of his trial;

22. [Appellant] was denied his right to a fair tribunal as the court had prepared its sentencing memorandum prior to the sentencing hearing of the trial;

23. [Appellant] was deprived of his constitutional right to a fair trial by the cumulative effect of all the errors that occurred during his penalty phase;

24. The trial court erred and denied [appellant] his constitutional right to a fair trial, by denying his motion for a new trial;

25. [Appellant] was denied due process and equal protection of the law [sic] his conviction of a death penalty specification that does not require proof of prior calculation and design for principal offenders but does require proof of prior calculation and design for an aider and abettor;

26. [Appellant's] death sentence has denied him due process under the law as the trial court erred in adopting the recommendation of the jury and in finding that the aggravating circumstances outweighed the mitigating factors;

27. Imposition of the death sentence violates the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 20 and 16, Article I, of the Ohio Constitution.

{¶4} The Ohio Supreme Court likewise affirmed and overruled appellant's 28 propositions of law argued to that court. *State v. Mack*, 73 Ohio St.3d 502, 653 N.E.2d 329 (1995) ("*Mack II*"). There, he argued the above-claimed errors and added a claim that his appellate counsel was ineffective.

{¶5} Next, appellant filed his first postconviction relief petition on August 2, 1996. There he alleged ineffective assistance of trial counsel. The trial court denied the petition in 1996 without a hearing, but that decision did not become final until 1999 when findings of fact and conclusions of law were issued. An appeal to this court followed. *State v. Mack*, 8th Dist. Cuyahoga No. 77459, 2000 Ohio App. LEXIS 4948 (Oct. 26, 2000) ("*Mack III*"). There he argued:

(1) trial counsel should have obtained an independent ballistics test on defendant's gun when the State's evidence showed that three bullet casings at the crime scene came from his gun; (2) Mrs. Carole Mancino, one of his

attorneys at trial, should have been allowed to testify regarding contradictory statements allegedly made to her by Tim Willis, the State's key witness; (3) defense counsel should have properly laid a foundation at trial for the introduction into evidence of allegedly prior inconsistent statements made by Curtis Mack and Tim Willis; and (4) defense counsel should have called four witnesses who purportedly would have called into question Willis' credibility on certain details and one witness who would have allegedly provided him with an alibi.

*Id*. at 3-4. This court overruled these arguments and affirmed the lower court's decision.

{¶6} After superior courts to this one declined to hear further appeals, appellant applied to reopen his appeal, claiming that appellate counsel was ineffective. *State v. Mack*, 8th Dist. Cuyahoga No. 62366, 2003-Ohio-2605 ("*Mack IV*"). This court declined to reopen the appeal based, in part, on res judicata because appellant had previously argued in *Mack II* that appellate counsel was ineffective. This court found that the following arguments were barred by res judicata:

(1) The prosecutor improperly argued that the aggravated murder was an aggravating circumstance to be considered by the jury in its weighing process.

(2) The prosecutor improperly argued the victim impact statement.

(3) The prosecutor misled the jury and minimized the jury's sense of duty by arguing that the sentencing verdict was only a recommendation.

(4) The prosecutor improperly, illegally, and unconstitutionally withheld exculpatory, impeachment and/or mitigation evidence, Mr. Willis' statement, from the defense.

(5) The trial court denied his motion for discovery and inspection of police reports, including witness statements.

(6) The trial court improperly instructed the jury to reject a death sentence before considering a sentence of life in prison.

(7) The trial court improperly instructed the jury on unanimity during the sentencing phase.

(8) The trial court improperly instructed the jury regarding reasonable doubt at the sentencing phase.

(9) The trial court improperly instructed the jury on the aggravating circumstances in this case.

(10) The trial court improperly refused to give lesser included instructions for murder and/or manslaughter, and proper instructions for specific intent.

(11) The trial court failed to apply the correct standard during voir dire to challenges pertaining to juror's views about the death penalty.

(12) The trial court repeatedly erred by using the term "recommendation" in describing the jury's sentencing verdict.

(13) The trial court failed to prevent the admission and use of victim impact evidence during the sentencing phase.

(14) The trial court erred in admitting the autopsy photographs during the sentencing phase.

(15) The trial court improperly determined that Mr. Mack would be sentenced to death before conducting the sentencing hearing.
(16) Ohio's proportionality and appropriateness review denies a defendant due process and equal protection and fails to guard against arbitrary and capricious death sentences.

(17) The trial court erred in allowing the hearsay testimony involving Mr. Willis and Mr. Anthony Sanelli and in otherwise violating the Confrontation Clause.

(18) Trial counsel was ineffective for not calling other alibi witnesses.

(19) The trial court erred in excluding the testimony of Carol Mancino and Curtis Mack.

(20) Ohio's death penalty scheme is unconstitutional.

*Mack IV* at ¶ 7.

{¶7} This court also analyzed the merits of appellant's claims for those arguments that were not barred by res judicata. As it relates to the present appeal, we addressed appellant's claim that trial counsel was ineffective because they did not investigate mitigation evidence for the penalty phase and did not thoroughly investigate the state's case. *Id.* at ¶ 36, 38. This court denied appellant's application. This decision was affirmed by the Ohio Supreme Court. *State v. Mack*, 101 Ohio St.3d 397, 2004-Ohio-1526, 805 N.E.2d 1108 ("*Mack V*").

{¶8} Appellant next filed a writ of habeas corpus in federal court. The federal district court allowed discovery and an evidentiary hearing. However, after the court determined that appellant failed to exhaust certain claims, the court stayed habeas proceedings to give appellant the opportunity to raise three claims in state court.[2] As a result, appellant filed a successive petition for postconviction relief and motion for leave to file a motion for new trial on December 21, 2011. Appellant also moved to have counsel appointed for these proceedings. The Office of the Ohio Public Defender declined to represent appellant below. After that, the attorneys that represented appellant in the federal proceedings filed a motion for extraordinary fees prior to

---

[2] These three claims are the same raised in appellant's third, fourth, and fifth assignments of error.

appointment in the case. The court denied that request, but the attorneys continued to represent appellant and were compensated through a federal program.

{¶9} The trial court held a hearing on appellant's petition that began on September 4, 2013, and concluded on September 16, 2013. Post-hearing briefs were submitted by both sides. On March 20, 2014, the trial court denied appellant's petition and motion and issued findings of fact and conclusions of law. Appellant then appealed to this court assigning six errors for review:

> I. The trial court erred when it denied [appellant's] second-in-time petition for [postconviction] relief for not meeting the jurisdictional requirements of R.C. 2953.23, or for any other reason. All requirements for the court's jurisdiction under R.C. 2953.23 were met, and [appellant's] claims are meritorious, thereby entitling [appellant] to relief from his unconstitutional convictions and/or sentence of death.

> II. [Appellant's] convictions and death sentence are void or voidable because Ohio's [postconviction] procedures do not provide an adequate corrective process and violate the [C]onstitution.

> III. [Appellant's] convictions and/or sentence of death are void and/or voidable because [his] trial counsel rendered ineffective assistance in the guilt/innocence phase of [his] trial by unreasonably failing to investigate and pursue arguments and evidence that, even under the State's theory, [appellant] was not the principal offender and thus not eligible for death, in violation of [his] constitutional rights.

> IV. [Appellant's] convictions and/or sentence of death are void and/or voidable because [his] trial counsel rendered ineffective assistance in the sentencing phase of [appellant's] trial, in violation of [his] constitutional rights.

> V. [Appellant's] convictions and/or sentence of death are void and/or voidable because the [s]tate of Ohio suppressed material exculpatory and/or impeachment information from [appellant] during and after his trial, in violation of *Brady v. Maryland* and its progeny and [appellant's] constitutional rights.

VI. The trial court erred in denying [appellant's] motion for leave to file a motion for new trial and in failing to grant a new trial.

## II. Law and Analysis

### A. Jurisdictional Requirements

{¶10} When dealing with successive postconviction relief petitions, the applicant has a heightened pleading requirement. R.C. 2953.23 governs successive or untimely petitions. It provides that a court may not entertain an untimely or successive petition unless the petitioner is able to demonstrate each of the following:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

R.C. 2953.23(A).

{¶11} If the court determines that a petitioner has met these jurisdictional requirements, then it may analyze the petition as set forth in R.C. 2953.21, where the petitioner must successfully show by clear and convincing evidence "actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances

the person was found guilty of committing and that is or are the basis of that sentence of death * * *."

**{¶12}** This court reviews the trial court's decision granting or denying a postconviction relief petition for an abuse of discretion. *State v. Kent*, 8th Dist. Cuyahoga No. 94562, 2010-Ohio-6368, ¶ 8, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 45.

**{¶13}** Appellant claims in his first assignment of error that the court erred when it denied his motion because he did not meet the jurisdictional requirements of R.C. 2953.23. The court, according to its findings of fact and conclusions of law, denied the motion because appellant did not

> establish that there exists new material which he could not with reasonable diligence have discovered and produced at the trial and that, but for constitutional error at trial, no reasonable factfinder would have found him guilty of the offense of which he was convicted or that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found him eligible for the death sentence.

The trial court found that appellant did not carry his burden. The trial court did not deny the petition outright, but held a hearing, and analyzed the petition properly under R.C. 2953.21. Therefore, the remainder of the discussion of this assigned error will include appellant's third and fourth assignments of error where he argues the merits of his petition.

### B. Ineffective Assistance of Trial Counsel

{¶14} Appellant's third and fourth assignments of error both claim trial counsel was ineffective. Appellant claims his convictions and sentence are void or voidable as a result of counsel's failings in the guilt and penalty phases.

{¶15} Appellant has previously argued ineffective assistance of trial counsel to this court at least twice. In his direct appeal, appellant claimed counsel was ineffective for not objecting to a jury instruction and failing to call witnesses during the penalty phase of trial. In his first postconviction relief petition, he claimed counsel was ineffective for failing to obtain independent ballistics analysis of a firearm, failing to properly cross-examine Willis with evidence of inconsistent statements he made, and failing to call certain witnesses. Appellant also made many of the same claims he now makes in a motion to reopen his direct appeal, which this court denied in 2003. *Mack IV*, 8th Dist. Cuyahoga No. 62366, 2003-Ohio-2605. There, he argued counsel was ineffective for failing to investigate mitigation evidence, failing to properly cross-examine Willis about inconsistencies in his testimony, failing to adequately conduct discovery, and failing to object to certain testimony given by Willis.

{¶16} Now, he again claims his attorney was ineffective for numerous reasons, some previously argued and some permutations of those arguments. The doctrine of res judicata prevents repeated attacks on a final judgment for issues that were or could have been previously litigated. *State v. Taylor*, 8th Dist. Cuyahoga No. 88020, 2007-Ohio-825, ¶ 8, citing *Rogers v. Whitehall*, 25 Ohio St.3d 67, 494 N.E.2d 1387 (1986). "Principles of res judicata prevent relief on successive, similar motions raising

issues which were or could have been raised originally." *Coulson v. Coulson*, 5 Ohio St.3d 12, 13, 448 N.E.2d 809 (1983).

{¶17} The assertions related to a failure to make alternative arguments in the guilt and mitigation phases of trial that were known or should have been known shortly after trial are not newly discovered and were previously litigated.

{¶18} Appellant first argues that counsel was ineffective for failing to make arguments at trial that appellant was not the person that actually killed the victim — that he was not the principal offender. At trial, counsel argued that appellant was not involved, that he was somewhere else, and produced witness testimony attempting to establish an alibi for the time of the murder. The arguments were known at the time of the first appeal and petition. This argument should have been advanced previously and is now barred by res judicata.

{¶19} Likewise, appellant's claims that an adequate investigation was not undertaken are not newly discovered. Appellant made these claims in 2003 in his application for reopening. Appellant argues that the application for reopening deals with the ineffectiveness of appellate counsel and did not properly raise the issue of ineffective assistance of trial counsel and is therefore not barred by res judicata. Many of the arguments made in *Mack IV* in 2003 mirror the arguments made here relative to ineffective assistance of trial counsel. Appellant waited for almost a decade before asserting these arguments in the proper forum if his arguments about res judicata are accepted as true. Even if these arguments are not barred by res judicata, they are not

newly discovered, and therefore, fail to meet one of the elements of a successful successive petition for postconviction relief. Appellant's third and fourth assignments of error are overruled.

## C. Adequacy of Postconviction Proceedings

{¶20} Appellant claims in his second assignment of error that Ohio's postconviction procedures do not provide for adequate review and relief from trial error, and this makes his conviction and sentence void or voidable.

{¶21} Appellant claims, like every other civil litigant, he should be afforded discovery before the court makes a determination whether a hearing is required. He claims this is an unfair burden because he is required to demonstrate the merits of his case prior to any additional discovery.

{¶22} Postconviction relief is not like a newly filed civil case. It comes after lengthy proceedings and discovery. It is a civil, collateral attack on a valid criminal judgment. Additional discovery is not required in such a situation. *Kent*, 8th Dist. Cuyahoga No. 94562, 2010-Ohio-6368, at ¶ 17. *See also State v. Russell*, 10th Dist. Franklin No. 16AP-542, 2017-Ohio-2871. Discovery is, however, allowed where a proper showing is made via motion. *See* R.C. 2953.21(A)(1).[3] The trial court has discretion to allow additional discovery. *State v. Lawson*, 12th Dist. Clermont No. CA2011-07-056, 2012-Ohio-548, ¶ 16.

---

[3] Further, the legislature in 2017, amended this statute to preclude its application to defendants sentenced to death for claims that were previously raised and rejected in postconviction proceedings. R.C. 2953.21(J).

**{¶23}** Here, there is no indication further discovery was required based on the extensive discovery that took place in appellant's federal hearings. The trial court granted appellant a hearing on his motion for postconviction relief, so there is no indication of any as-applied constitutional violations.

**{¶24}** Appellant also argues his convictions are void or voidable based on constitutional violations because the standard of review for a successive postconviction relief petition is greater than the standards of proof for claims of ineffective assistance of counsel or that the state withheld exculpatory evidence. But, "[p]ostconviction relief is not a constitutional right, and it affords a petitioner no rights beyond those granted by the controlling statute, R.C. 2953.23." *Lawson* at ¶ 16, citing, among others, *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).

**{¶25}** The *Lawson* court addressed a very similar argument to the one raised here. It held that the statutory scheme was not unconstitutional and the standard of review was a validly enacted procedural hurdle:

> We also note that the R.C. 2953.23(A)(2)'s clear and convincing standard did not become applicable until Lawson was afforded a full trial and mitigation hearing, and then appealed the decision of the jury and trial court to this court, the Ohio Supreme Court, as well as the federal courts. The clear and convincing standard applied only after Lawson filed an unsuccessful petition for postconviction relief and sought a second, and now a third petition for postconviction relief. As we stated in *McGuire*, the legislators created a "reasonable procedural hurdle" when it promulgated R.C. 2953.23(A)(2), when balancing the need for final judgment against a petitioner's right to challenge his conviction on the basis of constitutional violations. [*State v.*] *McGuire,* 12th Dist. [Preble] No. CA2000-10-011, 2001 Ohio App. LEXIS 1826, at 8. The state is entitled at some point to the finality of the judgment, and applying a clear and convincing standard to a third petition for postconviction relief is not unconstitutional.

*Lawson*, 12th Dist. Clermont No. CA2011-07-056, 2012-Ohio-578, at ¶ 32.

{¶26} The Eighth District has come to same conclusions regarding the constitutionality of former R.C. 2953.23[4] for successive petitions for postconviction relief. *State v. Taylor*, 8th Dist. Cuyahoga No. 80271, 2002-Ohio-2742, ¶ 13. The statute is not unconstitutional on its face or as applied, as this court and others have repeatedly held. *See, e.g., State v. Cook*, 1st Dist. Hamilton No. C-140118, 2014-Ohio-4900.

{¶27} Further, the United States Supreme Court recently addressed a case where a structural error occurred at trial, but the defendant failed to pursue that error in a direct appeal and raised it later in postconviction proceedings. *Weaver v. Massachusetts*, 582 U.S.___, 137 S.Ct. 1899, 198 L.Ed.2d 420 (2017). In that case, the trial court improperly closed the courtroom to the public, thus violating the defendant's right to a public trial. The court noted that this constituted a structural error that would normally result in reversal without a showing of prejudice. *Id*. at 431-432. Rather than apply the structural error standard, the court found that the claim was appropriately analyzed under the ineffective assistance of counsel standard, which requires the defendant to show prejudice. *Id*. at 435-436. Therefore, the standard of review does depend on the procedural posture of the case, and requiring a defendant to satisfy a higher burden does not violate a defendant's due process rights.

---

[4] This statute was amended in 2017, but is still substantively the same.

{¶28} Appellant's claim that the system of compensation for attorneys in postconviction relief deprived him of meaningful review is similarly without merit. The right to counsel in civil, collateral attacks on valid criminal judgments is not constitutionally required. *State v. Mapson*, 41 Ohio App.3d 390, 391, 535 N.E.2d 729 (8th Dist.1987).

{¶29} Appellant was in fact afforded counsel, albeit through federal procedures. In this case, counsel sought extraordinary fees prior to being appointed. That motion sought between $25,000 and $50,000 for representation in the filing of a motion for new trial/postconviction relief petition. Appellant did not offer substantial reasons to justify such extraordinary fees.

### D. Withholding of Exculpatory or Impeachment Evidence

{¶30} Appellant also claims the state withheld exculpatory evidence or evidence that could have been used to impeach Willis, a key witness. During the federal habeas proceedings, the state produced material that appellant claims was not made available prior to or during trial. He argues this evidence would have made a difference at trial and requires the court to vacate his convictions and sentence and retry him. Specifically, appellant identifies ten items he claims the state improperly withheld.

{¶31} The state has a duty to disclose certain information to a criminal defendant. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This is a fundamental principle of due process. *Id.* at the syllabus.

Pursuant to Crim.R. 16(B)(1)(f), a prosecutor is required "to disclose 'all evidence * * * favorable to the defendant and material either to guilt or punishment.'" *Cleveland v. Schmidt*, 8th Dist. No. 98603, 2013-Ohio-1547, ¶ 21. In *Brady*, the United States Supreme Court "held that the state must disclose 'evidence favorable to an accused * * * where the evidence is material either to guilt or to punishment.'" *Id.*, quoting *Brady* at 87. This rule, however, does not require the prosecutor "to produce the entire file to the defense. He or she is only required to produce evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* at ¶ 22, citing *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Under *Brady*, favorable evidence "includes both exculpatory and impeachment evidence, but the evidence must be both favorable and material before disclosure is required." *Id.*, citing *Bagley* at 674. Evidence is material "if there exists a 'reasonable probability' that the result of the trial would have been different had the evidence been disclosed to the defense." *Id.*, *citing Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), *quoting Bagley* at 682.

*State v. Sullivan*, 10th Dist. Franklin No. 13AP-861, 2014-Ohio-1260, ¶ 18. For information that was not disclosed to constitute a *Brady* violation, it must also be material. The evidence must be material to the convictions in order to warrant a new trial. "The question is not whether the defendant would more likely than not have

received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles* at 434. The court went on to set forth that a reasonable probability of a different result is shown "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.,* quoting *Bagley* at 678.

{¶32} The Supreme Court has recognized that three situations exist where *Brady* claims may arise:

> [W]here previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured; * * * where the Government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence; * * * where the Government failed to volunteer exculpatory evidence never requested, or requested only in a general way.

*Kyles* at 433.

### 1. Notes of Willis's Meeting With the Victim's Family

{¶33} Willis met with the family of the victim a day or two after the murder at their glass store that was run by Peter. Peter's son-in-law, Mike Barone, took notes of this conversation. At trial, Anthony Sanelli, Peter's son, testified that the notes were not given to police. During the previous appeals, it was the state's argument that these notes were not turned over to police. However, during the federal proceedings, appellant was able to show that police were given the notes shortly after the meeting. Appellant argues

that his name does not appear in the notes memorializing the conversation, although the name of the codefendant, Thomas Sowell, does.

{¶34} The trial prosecutor from appellant's criminal trial (the "trial prosecutor") testified in the federal proceedings that these notes were not disclosed to him and were not in his file at trial. He appeared to assert that he had no duty to turn over items not in his possession. However, the *Kyles* court specifically rejected this argument. *Kyles*, 514 U.S. at 438, 115 S.Ct. 1555, 131 L.Ed.2d 490. But these notes were cumulative of evidence gathered by appellant in preparation for trial. One of appellant's trial attorneys interviewed members of the Sanelli family and both attorneys were aware that Willis met with the family soon after the murder. Anthony Sanelli testified at trial about this meeting, and the notes also mirror Willis's first statement to the police.

{¶35} It is true that the notes do not include appellant's name, but they indicate that two people were involved and specifically mention one of the codefendants. The notes indicate that Willis identified the codefendant, Thomas Sowell, as the shooter, but that is not inconsistent with Willis's testimony. Both Sowell and appellant fired shots at Sanelli, as the forensic evidence established. Therefore, the notes are not contradictory in nature. They identify one perpetrator by name, and Willis identified the second perpetrator, appellant, to police shortly thereafter. These notes, while helpful in the cross-examination of Willis, were cumulative of other evidence and do not cast serious doubt on the verdicts in this case. The notes indicate two people were involved in the shooting of Peter even though only Sowell was named in this initial conversation.

## 2. Willis's First Written Statement to Police and the Associated Police Report

{¶36} In the first police report documenting Willis's contact with police, he relayed that Sowell was the person that shot Peter and that appellant and Reginald Germany were also involved. A second supplemental police report documented Willis's initial phone contact with police and contained materially the same statement. Willis's written statement also indicates that police asked Willis to identify Peter's vehicle prior to giving a written statement. Appellant claims this is all information that could have been used to impeach Willis's testimony. Appellant further claims that the fact that Willis identified Sowell as the shooter and appellant and Germany were involved constitutes a *Brady* violation.

{¶37} The transcript from the federal proceedings indicates trial counsel's notes included the disclosure or summary of Willis's written statements. This court has also previously found the trial record indicates disclosure of the written statement during trial. *Mack I*, 8th Dist. Cuyahoga No. 62366, 1993 Ohio App. LEXIS 5758, at 18. Appellant raised this in an assignment of error taking issue with the court's denial of a motion for discovery and inspection. This court found a lack of prejudice. *Id*. This also indicates that a lack of disclosure was not newly discovered and appellant does not explain why this claimed *Brady* violation was not brought in the prior postconviction relief petitions. The supplemental police reports documenting Willis's contact with police were duplicative of his written statement that resulted from that contact.

## 3. Oral Statement Given by Willis to Prosecutors

{¶38} According to the trial prosecutor's testimony in the federal proceedings, he met with Willis within one month of trial to discuss his trial testimony. Appellant argues the notes from this meeting indicate that, for the first time, Willis remembered that appellant stated, "I shot because you [meaning Sowell] shot." No prior statement contains this line Willis claimed was uttered by appellant when appellant, Sowell, and Willis were discussing the murder shortly after it happened. Appellant argues the changing nature of Willis's story as trial approached means this is relevant impeachment evidence that should have been disclosed prior to trial. Appellant also argues that the trial prosecutor made note of Willis's pending burglary case. Appellant asserts these notes should also have been disclosed because they could be used to infer that an undisclosed deal had been struck between Willis and the state.

{¶39} The notes do not contain an "I shot because you shot" reference. A statement contained in the notes indicates that Willis told the trial prosecutor that Sowell said he shot because Peter was uncooperative: "'I told the fool to get out, instead he got in & locked the door. I shot him.'" This is consistent with Willis's prior written statement. The trial prosecutor's testimony in the federal proceedings indicates that he did not remember taking notes of the meeting. However, when asked about the "I shot because you shot" statement appellant allegedly made to Willis, the trial prosecutor said he likely learned about the statement at that meeting. His answer was "I imagine I did. Yes. I would imagine I did, sure." The notes of the conversation that we now know exist do not indicate such a statement was made by Willis at the meeting.

**{¶40}** Other statements Willis made to police did not contain this statement, and therefore, these statements serve the same impeachment purposes that appellant alleges this undisclosed statement would have served. Further, the notes do not indicate that a deal was reached to secure Willis's testimony.

### 4. Notes From Willis's Second Meeting With the Victim's Family

**{¶41}** Appellant points to a police report that was turned over as part of the discovery in the federal proceedings that an undisclosed meeting between Willis and the Sanelli family occurred the day following the first meeting. Appellant argues this police report and any notes constitutes impeachment evidence about Willis's motive to testify in order to get a reward from the family. However, appellant's counsel testified at the federal hearing he knew of the rewards. He also admitted under questioning from the state that he used the reward motive to explain Willis's testimony in his opening statement at trial.

**{¶42}** Further, Anthony Sanelli testified at trial that appellant knew of the reward offered by the family. Also at trial, Willis denied any awareness or interest in the family reward when he first came forward, but testimony from the meeting participants, including Willis, indicated he knew of or was informed of the $10,000 reward offered by the family.

**{¶43}** At the hearing below, appellant's attorney similarly admitted that he was aware of the reward, and used that argument at trial to sow doubt in the minds of the jury about Willis's motives. Trial counsel cross-examined Willis extensively about his

motives for testifying, including the reward. Further, there are no notes of this meeting.

During the hearing below, Anthony Sanelli testified that Willis just came in to tell them he had contacted police and given them the information he had relayed to the family the day before. While a police report documented that Willis stopped by the store while an officer happened to be there, the report does not disclose anything of substance. The failure to disclose this encounter or the police report does not constitute a *Brady* violation.

At trial, Anthony Sanelli did testify that he did not see Willis again until months after the original meeting, so this could have been used to impeach that statement. However, the fact that Willis stopped into the store the next day for a brief visit to inform the family that he had indeed contacted police is not a material omission that prejudiced appellant.

### 5. Reports Generated From the Crash of the Victim's Vehicle

{¶44} A witness reported to Cleveland Police that he saw a man fitting Sowell's description crash Peter's car on Holton Avenue. A police report also indicated that someone was seen entering the stolen vehicle after it had been crashed into a utility pole and abandoned. The individual moved the car some distance and took the keys.

{¶45} Appellant argues that the witness to the crash gave a description of the driver that matched Sowell, rather than appellant. Appellant argues this indicates that it was Sowell, rather than appellant, who shot Peter. Appellant also argues that the individual seen moving the car could have returned to the vehicle to retrieve evidence rather than being an individual who happened upon an abandoned vehicle.

{¶46} This evidence is not exculpatory or readily used for impeachment. Willis testified that appellant told him that Sowell crashed the car into a pole. So that information was adduced at trial. Further, simply because Sowell was driving the car does not conflict with the evidence adduced or the state's theory of the case. Appellant claims that it only makes sense that if Sowell was seen driving the car, he must have been the person on the driver's side of the vehicle when the car was stolen. Therefore, he must have been the one who actually killed Peter. The fact that Sowell was driving the car does not lead to the conclusion that Sowell was the person that killed Peter. This post hoc argument does not cast doubt on appellant's conviction. It is also possible that Sowell wanted to drive the car and appellant let him, or that as appellant was pulling Peter from the vehicle after shooting and searching him, Sowell came around to the driver's side of the car and got in so the two could make a quick escape.

{¶47} All this evidence tends to establish is that Sowell was the person who was driving the car after the murder. This does not mean that Sowell, rather than appellant, was the person that caused Peter's death. This evidence is not exculpatory nor does it contradict Willis's statements at trial. Willis testified that Sowell was the driver of the vehicle when he encountered him and appellant soon after the murder. The accident reports that were not turned over do not amount to a *Brady* violation.

### 6. Reports of Searches of Willis's Property by Police

{¶48} Appellant argues that he should have been informed that Willis's house had been searched four times by police.

**{¶49}** The trial prosecutor testified during the federal proceedings that the searches were consensual searches conducted at Willis's request. He also testified he did disclose the police reports indicating police searched Willis's home and property, although the notes taken by appellant's attorney do not include disclosure of that fact. Further, notes taken by one of appellant's attorneys indicate she was aware that property was recovered from Willis's home that tied appellant to other robberies. Appellant was identified by the victims of those robberies as the person who stole the items. This further casts doubts on appellant's arguments that Willis was setting appellant up to escape his own responsibility in the murder. This is not beneficial to appellant such that it deprived appellant of an opportunity to properly cross-examine Willis and does not constitute a *Brady* violation.

### 7. Reports of a Police "Ski Mask Task Force"

**{¶50}** Appellant argues that Willis was a person of interest in several aggravated robberies and homicides being investigated by a Cleveland Police task force, dubbed the "Ski Mask Task Force."

**{¶51}** The testimony of the trial prosecutor indicated that these task force records were not a part of his file and no charges were pending or about to be filed before or during trial relating to this investigation. Willis did have a pending criminal indictment at the time of trial, but appellant's attorney testified he knew that. The evidence in the task force investigation goes only so far to name Willis as a person of interest. This fact was established at the hearing below by the testimony of Michael O'Malley. The fact

that Willis was a person of interest in certain crimes, and his picture was included in a book, along with roughly 30 others used by police investigating a series of robberies, does not amount to material that was required to be disclosed. The testimony adduced at the federal and state hearings indicates that appellant was not identified by any witness as a perpetrator of these crimes. The Robert Burgess prosecution was disclosed and trial testimony indicated that this case was pending against Willis at the time of trial. Therefore, this information does not constitute *Brady* material that was required to be turned over.

### 8. Evidence That Willis Testified Pursuant to a Plea Agreement

{¶52} In the weeks leading up to appellant's trial, it was disclosed to appellant's counsel that Willis was charged with aggravated robbery involving Robert Burgess. The charges in this case were ultimately dismissed. Appellant points to a note in the state's file of this prosecution that the trial prosecutor called the prosecutor assigned to Willis's case and asked him to hold the case to investigate it further. This conversation, documented by the prosecutor in Willis's case, occurred on July 30, 1991, a few weeks after the conclusion of appellant's trial, and a few days after Willis finished testifying against Sowell.

{¶53} The evidence adduced at the federal evidentiary hearing and below indicates Willis received no deal from the state for his testimony. The trial prosecutor testified that no consideration with other criminal matters was ever exchanged with Willis for his testimony against appellant. Willis's attorney testified that he was unaware of any deal.

There is no evidence of the terms of any deal between the state and Willis in the record before this court.

{¶54} However, appellant makes an inference, based on the sequence of events that took place in Willis's criminal matter, that a deal was reached. O'Malley also indicated during his testimony during a bail hearing involving federal charges against Willis, that he thought Willis received some type of deal. He testified, at the hearing below, that this impression was his personal opinion based on, his best recollection, some notes he read at the time.

{¶55} The trial prosecutor explained the conversation, stating he asked the other prosecutor to reinvestigate the case because, according to Willis, people were trying to set him up to discredit him.

{¶56} The notes of the prosecutor in Willis's case indicate that the case was dismissed because the victim, Burgess, died of unrelated causes, and without a witness, they could not prosecute. The trial court found that appellant had not demonstrated that a deal was reached to secure Willis's testimony. This court agrees.

### 9. Evidence of Perjury Committed by Willis.

{¶57} Appellant claims the state withheld evidence that indicated Willis was lying or that his story changed over time.

{¶58} The trial transcript indicates Willis testified that he was waiting outside of a recreation center while his child was inside on January 21, 1991. At approximately 5:30, he saw Sowell, Reginald Germany, and appellant in a car, and they stopped to talk.

Sowell exited the car and asked Willis if he had a gun. Sowell indicated the three were going downtown to get a "hottie," i.e., a stolen car.

{¶59} Willis testified that at about 7:15 he was walking his daughter back from The Fairfax Recreation Center. He saw Sowell and appellant in a different vehicle than they were driving previously. Sowell was driving a car that matched a description of the car stolen from Peter during the murder. Willis testified that he asked them where they got the car, and Sowell said they got it on Prospect Avenue. Appellant then asked Sowell why Sowell shot the man. After Sowell explained that he shot because the man didn't do what he said, Willis testified appellant stated, "'I shot because you shot.'" The gun that fired the bullets that killed Peter was also found in appellant's possession.

{¶60} Appellant claims the state should have known Willis's testimony was fabricated because the recreation center was closed that day. During the federal proceedings, appellant introduced testimony from a city of Cleveland employee that on the day Willis testified he saw appellant and Sowell in the car, the recreation center was actually closed because it was Martin Luther King, Jr., Day. However, Willis testified there was a big festival or a talent show or something. This does not indicate that the state knew Willis's testimony constituted perjury.

{¶61} Also, the fact that Willis's testimony differed somewhat from his previous statements to police does not indicate the state knew or should have known that Willis's testimony was untrue. Willis's testimony was substantially similar to his prior statements. This does not amount to a *Brady* violation.

## E. Motion for New Trial

**{¶62}** Finally, appellant claims the court erred in denying his motion for leave to file a motion for new trial or in denying his motion for new trial.

**{¶63}** Crim.R. 33 provides criminal defendants the opportunity to correct errors that affected a substantial right that occurred at trial. It states in relevant part,

[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

* * *

(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

* * *

(6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

**{¶64}** The statute also sets forth a period of time within which the motion must be filed. As it relates to motions based on newly discovered evidence, the rule provides,

> [m]otions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

Crim.R. 33(B). Here, appellant filed a motion for leave along with his motion for new trial, and the court conducted a hearing. The trial court accepted the motion, and denied it in a written decision.

**{¶65}** In order to be successful, a motion for new trial must establish that the movant was unavoidably prevented from the discovery of new material evidence that could not, with reasonable diligence, have been adduced at trial, which would have a strong probability of a different result.

> In addition to demonstrating that a petitioner was unavoidably prevented from discovering the evidence relied upon to support the motion for new trial, the petitioner also must show that he filed his motion for leave within a reasonable time after discovering the evidence relied upon to support the

motion for new trial. If there has been a significant delay, the trial court must determine whether the delay was reasonable under the circumstances or whether the defendant has adequately explained the reason for the delay.

*State v. Nunez*, 8th Dist. Cuyahoga No. 104917, 2017-Ohio-5581, ¶ 17.

**{¶66}** Further, the evidence must not be merely cumulative of other evidence, and evidence that merely impeaches or contradicts other evidence is not sufficient where it does not create a strong probability of a change in result. *State v. Petro*, 148 Ohio St. 505, 506, 76 N.E.2d 370 (1947), syllabus. Again, the "touchstone of materiality is a 'reasonable probability' of a different result * * *." *Kyles,* 514 U.S. at 434, 115 S.Ct. 1555, 131 L.Ed.2d 490, quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375, 87 L.Ed.2d 481.

**{¶67}** Appellant asserts that, based on the arguments advanced in the postconviction relief petition, the trial court erred in not granting a new trial as well. For the same reasons set forth above regarding that petition, the trial court did not err in denying appellant's motion for new trial. Those arguments not barred by res judicata do not lead to a reasonable probability of a different result.

### III. Conclusion

**{¶68}** Here the evidence adduced does not undermine the confidence in the verdicts of guilt, and therefore, the trial court did not abuse its discretion in denying appellant's successive petition for postconviction relief and motion for new trial after a thorough hearing. The system of representation in postconviction proceedings is not unconstitutional.

**{¶69}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MARY EILEEN KILBANE, J., CONCUR